# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INFINITY COMPUTER PRODUCTS, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 18-463-LPS-CJB |
| | § | |
| OKI DATA AMERICAS, INC., | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFF INFINITY'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT OF LIMITATION ON PRE-ISSUANCE
<u>DAMAGES AND ABSOLUTE INTERVENING RIGHTS</u>**

Dated:  August 10, 2018

William J. Rhodunda, Jr. (No. 2744)
Chandra J. Williams (No. 4907)
Rhodunda & Williams, LLC
1220 N. Market Street, Suite 700
Wilmington, DE 19801
Telephone: (302) 576-2000
Facsimile:  (302) 576-2004
bill@rawlaw.com
chandra@rawlaw.com

Andrew G. DiNovo (admitted *pro hac vice*)
Nicole E. Glauser (admitted *pro hac vice*)
Gabriel R. Gervey (admitted *pro hac vice*)
DiNovo Price LLP
7000 N. MoPac Expressway, Suite 350
Austin, Texas 78731
Telephone: (512) 539-2626
Facsimile:  (512) 539-2627
adinovo@dinovoprice.com
nglauser@dinovoprice.com
ggervey@dinovoprice.com

***Counsel for Plaintiff
Infinity Computer Products Inc.***

**Table of Contents**

I.     NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.    SUMMARY OF THE ARGUMENT ........................................................................ 1

III.   COUNTERSTATEMENT OF FACTS ..................................................................... 2

     A.    First Group: Claims In Which Reexamined Claims Were Amended To Recite "Generic" Send/Receive Driver Communications Software ............................................... 2

     B.    Second Group: Claims In Which Reexamined Claims Were Amended To Recite Use Of An "Unmodified Standard Protocol" ........................................................ 6

IV.   ARGUMENT ................................................................................................... 8

     A.    Defendant Has Not Met Its Burden ......................................................... 8

          1.    Summary Judgment Standard / Burden Of Proof .......................... 8

          2.    Standards For "Pre-Issuance Damages" And "Absolute Intervening Rights" ............................................................................ 8

     B.    Defendant's Motion Should Be Denied Because It Failed To Apply The Proper Claim Construction Principles To Determine The Scope Of The Claims ....................... 11

          1.    Defendant Fails to Apply Phillips ................................................ 11

          2.    Defendant Fails to Provide Support from the Patent Specification ............. 12

          3.    Defendant Fails to Provide Relevant Support from the Prosecution of the Original Claims ...................................................................... 13

          4.    Defendant Does Not Offer any Extrinsic Support ......................... 13

     C.    The Amended Claims Are "Substantially Identical" in Scope to the Original Claims 14

          1.    "generic send/receive driver communications software" ............................ 14

          2.    "using an unmodified standard protocol" ................................... 16

     D.    Defendant's Absolute Intervening Rights Argument Fails as a Matter of Law ... 17

          1.    Absolute Intervening Rights Is Not a Valid Defense for Method Claims .... 17

          2.    Absolute Intervening Rights Is Inapplicable to Activity Post-Issuance Except as to "Specific Things," Not "Products" ................................................... 20

V.     CONCLUSION ................................................................................................ 20

# Table of Authorities

## Cases

*BIC Leisure Prod., Inc. v. Windsurfing Int'l, Inc.*,
  1 F.3d 1214 (Fed. Cir. 1993)........................................................................ 18

*Bloom Eng'g Co. v. North Am. Mfg. Co., Inc.*,
  129 F.3d 1247 (Fed. Cir. 1997)..................................................................... 10

*Convolve, Inc. v. Compaq Computer Corp.*,
  812 F.3d 1313 (Fed. Cir. 2016)......................................... 9, 10, 11, 12, 14

*Eberle v. Harris*,
  No. CIV.A.03-5809(FLW), 2010 WL 6281563 (D.N.J. June 30, 2010).................. 15

*In re Kollar*,
  286 F.3d 1326  (Fed. Cir. 2002)...................................................................... 18

*Intest Corp. v. Reid-Ashman Mfg., Inc.*,
  66 F. Supp. 2d 576 (D. Del. 1999)..................................................................... 8

*Laitram Corp. v. NEC Corp.*,
  163 F.3d 1342 (Fed. Cir. 1998)......................................................................... 8

*Laitram Corp. v. NEC Corp.*,
  952 F.2d 1357 (Fed. Cir. 1991)................................................................. 10, 13

*Lawrence v. City of Phila., Pa.*,
  527 F. 3d 299,(3d Cir. 2008)............................................................................ 19

*Lecat's Ventriloscope v. MT Tool & Mfg.*,
  No. 16 C 5298, 2018 WL 386165 (N.D. Ill. Jan. 11, 2018) .................................... 11

*Linear Tech. Corp. v. Micrel, Inc.*,
  No. C-94-1633 MHP, 2006 WL 8425047, (N.D. Cal. June 9, 2006) ......................... 8

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995) *aff'd*, 517 U.S. 370 (1996) ................................ 10, 13

*Minco, Inc. v. Combustion Eng'g, Inc.*,
  95 F.3d 1109 (Fed. Cir. 1996)......................................................................... 14

*MobileMedia Ideas, LLC v. Apple Inc.*,
  209 F. Supp. 3d 756 (D. Del. 2016)............................................................. 11, 15

*MonoSol Rx, LLC v. Biodelivery Scis. Int'l, Inc.*,
  No. CIV. 105695 (FLW/DEA), 2015 WL 5679891 (D.N.J. Sept. 25, 2015) ............... 9

*NetAirus Techs., LLC v. Apple, Inc.*,
  No. LA CV10-03257 JAK, 2013 WL 3089061 (C.D. Cal. May 23, 2013)................... 19

*On Demand Mach. Corp. v. Ingram Industries, Inc.*,
  442 F.3d 1331 (Fed. Cir. 2006)........................................................................ 15

*Phillips v. AWH Corporation. See Convolve, Inc. v. Compaq Computer Corp.*,
  812 F.3d 1313 (Fed. Cir. 2016)..................................................................... 2, 9

*Phillips*, 415 F.3d at 1313 .......................................................... 9, 10, 12

ii

*Pitney Bowes, Inc. v. Hewlett–Packard Co.,*
    182 F.3d 1298 (Fed. Cir. 1999)............................................................................ 9

*Predicate Logic, Inc. v. Distributive Software, Inc.,*
    544 F.3d 1298 (Fed. Cir. 2008)......................................................................... 18

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.,*
    875 F.3d 1369 (Fed. Cir. 2017)..................................................................... 9, 11

*R+L Carriers, Inc. v. Qualcomm, Inc.,*
    801 F.3d 1346 (Fed. Cir. 2015)............................................................................ 9

*Rambus, Inc. v. Infineon Techs. AG,*
    No. 300-CV-524, 2001 WL 34138091 (E.D. Va. Mar. 15, 2001)............................. 10

*Rohm & Haas Co. v. Chem. Insecticide Corp.,*
    171 F. Supp. 426 (D. Del. 1959)....................................................................... 20

*Schindler Elevator Corp. v. Otis Elevator Co.,*
    593 F.3d 1275 (Fed. Cir. 2010)......................................................................... 10

*Slimfold Mfg. Co. v. Kinkead Indus., Inc.,*
    810 F.2d 1113 (Fed. Cir. 1987)..................................................................... 9, 11

*Univ. of Va. Patent Found. v. Gen. Elec. Co.,*
    792 F. Supp. 2d 904 (W.D. Va. 2011) ............................................................... 19

*Verco Decking Inc. v. Consol. Sys. Inc.,*
    No. CV-11-02516-PHX-GMS, 2015 WL 11117077 (D. Ariz. July 21, 2015)............ 8

## Statutes

35 U.S.C. § 100................................................................................................. 17

35 U.S.C. § 252....................................................................................... 18, 19, 20

Infinity Computer Products, Inc. ("Plaintiff" or "Infinity") hereby submits this brief in response to the Motion for Summary Judgment of Limitation on Pre-Issuance Damages and Absolute Intervening Rights (D.I. 113) (the "Motion") filed by Defendant Oki Data Americas, Inc. ("Defendant" or "ODA").

## I.    NATURE AND STAGE OF THE PROCEEDINGS

In this patent infringement case, four patents have been asserted against ODA: U.S. Patent No. 6,894,811 (the "'811 Patent"); U.S. Patent No. 7,489,423 (the "'423 Patent"); U.S. Patent No. 8,040,574 (the "'574 Patent"); and U.S. Patent No. 8,294,915 (the "'915 Patent") (collectively, the "Patents-in-Suit").

In accordance with the Court's Scheduling Order (D.I. 107), on June 8, 2018, Infinity provided Plaintiff's Disclosures Pursuant to Paragraph 7 of the Scheduling Order, in which it identified 104 relevant infringing products. **ODA responded on July 10 with a facially incomplete core document production relating to just a single product that it contends is subject to intervening rights, notwithstanding that this Court ordered it to provide its core document production "related to [all] the accused products**."

## II.    SUMMARY OF THE ARGUMENT

ODA improperly seeks to limit the scope of the damages period for Infinity's patents due to clarifying amendments made to certain claims during reexamination. The crux of the issue is whether two categories of amendments—one of which added the word "generic," and the other of which added the words "using an unmodified standard protocol for," substantially modified the scope of the subject claims.  They were clarifications and did not, in view of the entirety of the intrinsic record and applicable claim construction principles.

1

Defendant titles its two arguments: (1) "Limitation on Damages Under 35 U.S.C. § 252 ¶ 1" (Brief at 6); and (2) "Absolute Intervening Rights Under 35 U.S.C. § 252 ¶ 2" (Brief at 8).  As a threshold matter, under either analysis, Defendant's Motion fails because both defenses require that the reexamination amendments were substantive, meaning that there must have been a change in claim scope between the original and amended claims. The Federal Circuit requires Defendant to apply ordinary claim construction principles, as per *Phillips v. AWH*, in order to ascertain whether there was a change in claim scope.  ODA fails to analyze the claims under *Phillips*.

The second asserted defense of "absolute intervening rights" is flawed for two additional reasons. It is inapplicable to the method claims asserted in this case. More specifically "absolute intervening rights" is limited to "specific things,"—or, as the Federal Circuit has ruled—"tangible products." Defendant also misstates the temporal scope of the defense, and would seemingly apply it to "product" models in existence prior to issuance of the reexamined patents, even if the specific tangible thing was first made, used or sold after issuance.  Absolute intervening rights only extends to specific tangible things made, used or sold prior to issuance.

### III.    COUNTERSTATEMENT OF FACTS

During reexamination, two groups of claims were amended. Neither amendment altered the scope of the claims. Instead, the amendments merely clarified how the invention, as originally claimed, differed from the prior technology identified by the examiner.

A.    <u>First Group: Claims In Which Reexamined Claims Were Amended To Recite "Generic" Send/Receive Driver Communications Software</u>

The first group of claims consist of the following: (i) reexamined claims 1-6 and 18-20 of U.S. Patent No. 6,894,811C1; (ii) reexamined claims 1-6 of U.S. Patent No. 7,489,423C1; (iii) reexamined claims 1-8 of U.S. Patent No. 8,040,574C1; and (iv) reexamined claims 1-4, 6-12, 14,

2

and 15 of U.S. Patent No. 8,294,915C1.[1]  Each of these claims was amended to recite the word "*generic*" preceding the phrase "send/receive driver communications software" (or an equivalent "software" term) in the corresponding originally-issued claim. That is, the reexamined claims clarified that the communication software recited in the corresponding original claims was "generic." The specification teaches use of send/receive driver communication software to facilitate communication between personal computers ("PCs") and facsimile machines ("Faxes").[2]

The specification identifies as an objective of the Patents-in-Suit to utilize generic standard protocol and send/receive communications software of the existing Faxes and PCs, including generic interfacing of any PC with any Fax. *See* '811 Patent at 1:39-40 ("It is, therefore, a principal object of the present invention to provide a circuit for interfacing a PC and a facsimile."). [3]  It is further taught that the type, brand, or identity of PC and Fax is immaterial. (*See id*. at 4:59-60) ("The PC, which may be any type of computer…"); (*see also, id*. at 5:17-20). The specification also discloses that the communications and/or signaling between the PC and the Fax are generic. (*See id*. at 8:50-63) Reading these passages, a person having ordinary skill in the art at the time of the invention ("PHOSITA") would therefore understand that the invention relates to a "generic" connection between a PC and a Fax.  *See* Declaration of Marc E. Levitt at ¶¶ 25-29 (the "Levitt Decl."); *see also,* Declaration of Ivan Zatkovich at ¶ 8 (the "Zatkovich Decl.").[4]

---

[1] The Patents-in-Suit are attached to the Halderman Decl. as Exhs. A, H, I and J.

[2] *See* Declaration of Mark Halderman (the "Halderman Decl.," Exh. A, '811 Patent at Abstract.

[3] Because all of the Patents-in-Suit share the same specification, references made to the "specification" will, for the sake of convenience and simplicity, refer solely to the specification of U.S. Patent Number 6,894,811 B1, including its column and line numbering. The notation "1:39-40," for example, is used to refer to column 1, lines 39-40 of that patent specification.

[4] Dr. Levitt and Mr. Zatkovich offer their expert opinions on how a PHOSITA would interpret the claim language at the time of the invention. Dr. Levitt is familiar with this matter as he previously served as a declarant for Infinity during the reexaminations of the Patents-in-Suit. Mr. Zatkovich, another expert in the field of the invention, has also reviewed the analysis and

The specification further states that the "send/receive communications software" must be "generic." This is disclosed in Figure 2g and the text corresponding to this figure. (*See* '811 Patent at 8:4-26). As illustrated below, the "send/receive communications software" is identified interchangeably as "*generic* send/receive driver communications" software and simply as "send/receive driver communications software" in the portion of the specification that describes the Figure 2g.  (*Id*. at 8:4-26.)



Fig. 2g

(*Id*. at Fig. 2g) (highlighting added).

The specification also discloses that "[a]ny available [send/receive driver communications] software package is acceptable." (*Id*. at 8:24-26.) The commonality of the [send/receive driver communications] software package is the generic component, which applies to an entire class of devices.  The function of the "send/receive driver communications software" is described without any further description of the characteristics or type of the PC or the Fax. (*Id*. at 8:15-20.) In addition, the specification discloses that the "send/receive driver communications software has the ability to send a digital image to the facsimile machine for printing purposes" and that the

conclusions of Dr. Levitt, and likewise offers his opinions concerning how a PHOSITA would interpret the claim language.

"facsimile machine's control/modem *circuitry* receives the digital image and it is then processed by the print driver 77 for printing." (*Id*. at 8:17-22) (emphasis added).[5] The specification describes that the "[t]he circuitry of the present invention is *highly simplified in design* and provides effective communication between the PC and local facsimile machine enabling the local facsimile machine to provide the dual functions of … [and] *provides all the necessary signal conditions* which lead the PC and local facsimile machine to believe that they are communicating with one another over a telephone line." ('811 Patent at 8:50-59 (emphasis added)). A PHOSITA reading "send/receive driver communications software" in light of these passages would understand the term to be "generic" and not "specifically tailored" to any particular PC or Fax machine. (*See* Levitt Decl. at ¶¶ 30-34; Zatkovich Decl. at ¶ 8.) Indeed, all of the embodiments depicted in diagrams 2a-2j depict an "Interfacing CKT 10" between the fax modem circuitry of the PC computer and the fax modem circuitry of the facsimile machine. (*See e.g.,* '811 Patent at 5:647:31). The primary purpose of the "Interface CKT 10" is to allow both the facsimile machine and the PC to use their existing generic send/receive driver communications software for communications (*e.g.*, standard modem drivers). (*See* Levitt Decl. at ¶¶ 35-36; Zatkovich Decl. at ¶ 8.)

This interpretation was affirmed by both the patentee and the patent examiner in the prosecution history. For example, in the Response dated October 28, 1999, the applicant differentiated "use of special software" (p. 8) and discussed how Perkins uses a "specialized device 3 and control software" and that Perkins does not claim "**a generic way of scanning and printing**" *Id.* at 8-10 (attached as Exhibit 1) (emphasis added).   The patentee also described PC↔Fax communication in an amendment during the prosecution of an original claim in the '811 Patent as

---

[5] In an administrative correction not asserted by ODA to change the scope of any claim, the Certificate of Correction added "receives the digital image and it is" after "circuitry" in column 8, line 21 (See '811 Patent at 19 (June 10, 2008)).

"data transferred in a conventional way, and without manipulation, or modification of the original signals."[6] That claim was later amended to explicitly recite "send/receive driver communications software" and the software was described by the patentee as "*standard* communications software *available for most computers* …."[7]   Indeed, during reexamination, the examiner described "generic" send/receive driver communications software as "software capable of sending and receiving data in a general sense, and [ ] not limited to any particular type of data."[8]

B.   Second Group: Claims In Which Reexamined Claims Were Amended To Recite Use Of An "Unmodified Standard Protocol"

The second group of claims consists of claims 7-17 of U.S. Patent No. 6,894,811C1. Specifically, each claim was amended to recite "using an unmodified standard protocol for" preceding "shifting the personal computer to …" in the corresponding originally-issued claims. After applying correct claim construction principles, it is clear that the original claims inherently required use of "unmodified standard protocols," meaning that addition of that phrase to the reexamined claims did not alter their scope or meaning.

Again, as with the "send/receive driver communication software" terms, the specification clearly discloses that the invention involves interfacing a PC with a Fax,[9] that the type of the PC[10] and the Fax[11] is immaterial, and that standard protocols are used for communications between a

---

[6] See Halderman Decl., Exh. B, September 2, 1998 Amendment (adding claim 27, which ultimately issued as claim 1).

[7] *See* Halderman Decl., Exh. C, January 17, 2002 Amendment (amendment to claim 27, which ultimately issued as claim 1) (emphasis added)

[8] *See* Halderman Decl., Exh. D, February 10, 2012 Final Rejection at p. 5.

[9] *See* '811 Patent at 1:39-40 ("It is, therefore, a principal object of the present invention to provide a circuit for interfacing a PC and a facsimile.").

[10] *See* '811 Patent at 4:59-60 ("The PC, which may be any type of computer…").

[11] *See* '811 Patent at 5:17-20.

PC and a Fax.[12]  This requirement is also directly referred to in the specification. (*See* '811 Patent at 8:56-59) ("***[t]he circuitry*** of the present invention provides all the necessary signal conditions which lead the PC and local facsimile machine to believe that they are communicating with one another over a telephone line") (emphasis added).   A PHOSITA would understand that the "genericness" of the PC and Fax communication requires the use of unmodified standard protocols, because the PC and Fax could not be expected to reliably communicate if the protocols were specific to one or the other or if the protocols were modified to be different from standard protocols. (*See* Levitt Decl. at ¶¶ 39-42; Zatkovich Decl. at ¶ 9-10.)

In addition to being taught by the specification, the prosecution history of the reexamined "unmodified standard protocol" claims is also consistent with these claims having a scope and a meaning that was not changed during reexamination.  In the Response filed on Sept. 26, 2002, the applicant argued in reference to pre-reexam claims that "not having to modify or manipulate the standards [sic] signals generated by the facsimile transceiver or computer, sets the Applicant apart from Perkins, and all other known patents."  *Id.* at 13 (attached as Exhibit 2).  Referring to the claims pending in the application prior to its original issuance, the patentee described communications between the PC and the Fax as involving "data transferred in a conventional way, and without manipulation, or modification of the original signals."[13]

During subsequent reexamination, the patentee distinguished the claims from a prior art reference by pointing out that the patentee's specification indicates use of standard protocols for PC↔Fax communications.  These reexamined claims were simultaneously amended to recite

---

[12] *See, e.g.*, '811 Patent at 5:48-51 ("The computer (PC) is operated … to enter into a standard protocol with the facsimile machine").

[13] *See* Halderman Decl., Exh. B, September 2, 1998 Amendment (adding claim 27, which ultimately issued as claim 1).

"using an unmodified standard protocol for" to emphasize or clarify this difference but, as set forth above, the amendment did not alter the scope or meaning of those claims.[14]

## IV.    ARGUMENT

### A.    Defendant Has Not Met Its Burden

#### 1.  *Summary Judgment Standard / Burden Of Proof*

It is well-established that defendants "bear[] the burden of proof to establish … intervening rights and the resultant reduction in damages." *Linear Tech. Corp. v. Micrel, Inc.*, No. C-94-1633 MHP, 2006 WL 8425047, at *78 (N.D. Cal. June 9, 2006), *amended by* No. C-94-1633 MHP, 2006 WL 2130736 (N.D. Cal. July 27, 2006). Defendant must show not only that the claims were amended during the reexamination, but also that the amendments were substantive. *Intest Corp. v. Reid-Ashman Mfg., Inc.*, 66 F. Supp. 2d 576, 581-82 (D. Del. 1999) (rejecting defendant's argument that plaintiff bears the burden of proof on "the issue of whether the original and amended claims are identical").[15]

#### 2.  *Standards For "Pre-Issuance Damages" And "Absolute Intervening Rights"*

Defendant asserts two defenses under 35 U.S.C. § 252: (1) "pre-issuance" damages (under the first paragraph of §252), and (2) "absolute intervening rights" (under the second paragraph, first sentence of § 252). Neither of these defenses, however, can limit the damages period if the "reexamined claims … are 'without substantive change." *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998). Generally, the owner of a reexamined patent is entitled to enforce

---

[14] *See* Halderman Decl., Exh. E, November 21, 2011 Amendment at p. 9 ("the methods of the instant patent enable a conventional facsimile machine to communicate with a personal computer, and vice versa, using 'a standard protocol' (citation to specification omitted).").

[15] *See also Verco Decking Inc. v. Consol. Sys. Inc.*, No. CV-11-02516-PHX-GMS, 2015 WL 11117077, at *8 (D. Ariz. July 21, 2015) (finding no intervening rights because defendant offered no evidence to show that the amendments substantially changed the text of the claims).

each claim that was amended during reexamination as of the original issue date of the patent, so long as the claim scope has not changed. *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1378-79 (Fed. Cir. 2017). However, if an amendment made during reexamination substantively changed an original claim, the patentee is only entitled to infringement damages for the period following issuance of the reexamination certificate. *R+L Carriers, Inc. v. Qualcomm, Inc.*, 801 F.3d 1346, 1349 (Fed. Cir. 2015).

Further, it is the scope of the claim – not merely a change in wording – which must be identical. *See Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 810 F.2d 1113, 1116 (Fed. Cir. 1987) ("it is the scope of the claim that must be identical, not that the identical words must be used"). To determine the scope of the original and amended claims, the Court must construe the disputed claim terms under the standard articulated by the Federal Circuit in *Phillips v. AWH Corporation. See Convolve, Inc. v. Compaq Computer Corp.*, 812 F.3d 1313, 1325 (Fed. Cir. 2016) ("In the intervening rights analysis, our task is to interpret the scope of the claims per the *Phillips* standard …."); *see also Presidio Components, Inc.*, 875 F.3d at 1378-79 ("the relevant inquiry is whether the scope of the amended claims is actually identical to the scope of the original claims based on normal claim construction analysis, articulated in our *en banc Phillips* decision").

When applying *Phillips*, "the court may examine both intrinsic evidence (*e.g.*, the patent, its claims, the specification and prosecution history) and extrinsic evidence (*e.g.*, expert reports, testimony and anything else)." *MonoSol Rx, LLC v. Biodelivery Scis. Int'l, Inc.*, No. CIV. 105695 (FLW/DEA), 2015 WL 5679891, at *9-10 (D.N.J. Sept. 25, 2015) (citing *Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1309 (Fed. Cir. 1999)). "[T]he specification 'is the single best guide to the meaning of the disputed term,' and is usually dispositive." *Convolve, Inc.*, 812 F.3d at 1325 (quoting *Phillips*, 415 F.3d at 1313). Where possible, a patent's prosecution history

9

should be read "as support for the construction already discerned from the claim language and confirmed by the written description." *Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1286 (Fed. Cir. 2010). "The focus [in construing disputed terms in claim language] is on the objective test of what ***one of ordinary skill in the art at the time of invention*** would have understood the terms to mean." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 986 (Fed. Cir. 1995) *aff'd*, 517 U.S. 370 (1996) (emphasis added).

When relying on the prosecution history, including statements made during reexamination, it is important to note that "amendments made during reexamination do not necessarily compel a conclusion that the scope of the claims has been substantively changed." *See, e.g., Bloom Eng'g Co. v. North Am. Mfg. Co., Inc.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997) ("There is no absolute rule for determining whether an amended claim is legally identical to an original claim."). This principle is "true even where the claims at issue were amended during reexamination after a rejection based on prior art." *Convolve, Inc.*, 812 F.3d at 1322 (citing *Laitram Corp. v. NEC Corp.*, 952 F.2d 1357, 1362-63 (Fed. Cir. 1991)). In fact, "[a]n argument made to an examiner constitutes a disclaimer only if it is 'clear and unmistakable.'" *Schindler Elevator Corp.*, 593 F.3d at 1285.

Further, the patent "examiner's finding under the broadest reasonable interpretation that the claims are not limited to [a particular construction] cannot be dispositive." *Convolve, Inc.*, 812 F.3d at 1325. Indeed, it is error "[t]o the extent that [a] district court [adopts the examiner's] reasoning wholesale without accounting for the differences between the broadest reasonable interpretation standard and *Phillips* [standard]." *Id.* This is because "[p]atent examiners construe claims under a broader standard than that used by a court in undertaking claim construction." *Rambus, Inc. v. Infineon Techs. AG*, No. 300-CV-524, 2001 WL 34138091, at *14 (E.D. Va. Mar. 15, 2001). "Thus, were a district court to construe claim language more narrowly than the examiner

did during prosecution, the difference 'could well be explained by the differing claim construction standards that apply at the PTO.'" *Lecat's Ventriloscope v. MT Tool & Mfg.*, No. 16 C 5298, 2018 WL 386165, at *9 (N.D. Ill. Jan. 11, 2018); *see also, MobileMedia Ideas, LLC v. Apple Inc.*, 209 F. Supp. 3d 756, 762 (D. Del. 2016) (finding no intervening rights as the patent examiner's broader interpretation of "communication status" does not control the Court's intepretation).

> **B.**   Defendant's Motion Should Be Denied Because It Failed To Apply The Proper Claim Construction Principles To Determine The Scope Of The Claims

> *1. Defendant Fails to Apply Phillips*

Defendant offers two flawed arguments that the claims were substantively changed during reexamination. First, it argues that the addition of words to the claims during reexamination automatically changed the claim scope. This is wrong as a matter of law. *See Slimfold Mfg. Co*, 810 F.2d at 1116 ("it is the scope of the claim that must be identical, ***not that the identical words must be used***") (emphasis added). Second, it argues that the Court need not interpret the claims but merely determine if the original claims encompassed some "send/receive driver communications software" or some protocol of "shifting the personal computer" that the amended claims do not encompass. Brief at 9.  That is not the relevant inquiry.

"[T]he relevant inquiry is whether the scope of the amended claims is actually identical to the scope of the original claims based on normal claim construction analysis, articulated in [the Federal Circuit's] *en banc Phillips* decision." *Presidio Components, Inc.*, 875 F.3d at 1378-79; *see also, Convolve, Inc.*, 812 F.3d at 1325.   Here, Defendant provides only argument and no explanation as to how the specification, the prosecution of the original claims, or any extrinsic evidence (*e.g.*, an expert declaration or learned treatises) support any constructions of the original or amended claims.

Instructive is *Convolve, Inc.*, in which the patentee added the modifier "seek" in front of "acoustic noise" during reexamination. 812 F.3d at 1323. Applying the *Phillips* framework, the Federal Circuit determined that "the claims were originally limited to seek acoustic noise, and the addition of the word 'seek' did not alter the scope of the claims." *Id.* The original claims on their face only recited "acoustic noise," which the Federal Circuit recognized "could encompass any manner of acoustic noise." *Id.* The Federal Circuit determined, however, that after reading the claims "in conjunction with the remaining claim limitations and in light of the specification and prosecution history, a person of ordinary skill in the art would understand the claims to be limited to seek acoustic noise." *Id.* Thus, the addition of the word "seek" to "acoustic noise" did not change the scope of the claims. *Id.* Importantly, the Federal Circuit decided that statements during the reexamination did not compel a different result. *Id.* at 1325. This is because the patent examiner applied the "broadest reasonable interpretation" standard and "focused exclusively on the language of the claims at the expense of the clear language in the specification." *Id.* The Federal Circuit concluded that "the examiner's finding under the broadest reasonable interpretation that the claims are not limited to 'seek acoustic notice' cannot be dispositive" and that the court had to apply the standard articulated in *Phillips*. *Id.*

### 2.   *Defendant Fails to Consider Support from the Patent Specification*

Defendant did not construe the original claim language in view of the specification, merely providing select excerpts. *See* Brief at 10. This omission is fatal as the specification "is the single best guide to the meaning of the disputed term,' and is usually dispositive." *Convolve, Inc.*, 812 F.3d at 1325 (quoting *Phillips*, 415 F.3d at 1313). Indeed, it is a well-established claim construction principle that the "claims must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315.

### 3.  Defendant Fails to Provide Relevant Support from the Prosecution of the Original Claims

Defendant's Memorandum relies exclusively on the changes to the claim language and a few cherry-picked statements made during the prosecution of the reexamined claims. This is not enough for Defendant to meet its burden for summary judgment. The Federal Circuit has consistently held that there is no *per se* rule that a claim amendment made during reexamination following a prior art rejection is a substantive change. *See Laitram*, 952 F.2d at 1360-61. Rather, each case is decided on its facts applying the *Phillips* standard. *Id.* Further, "[a]n argument made to an examiner constitutes a disclaimer only if it is 'clear and unmistakable.'" *Purdue Pharma L.P.*, 438 F.3d at 1136. The statements made by Infinity cannot be categorized as clear and unmistakable disclaimers. Infinity never once conceded that the original claim scope included both "specific" and "generic" send/receive driver communication software, or that the addition of "generic" was necessary to overcome a prior art rejection. Rather, the scope of the original claims was not changed.

### 4.  Defendant Does Not Offer any Extrinsic Support

Defendant also does not submit any extrinsic evidence, such as an expert declaration or dictionaries and learned treatises that would have been relied upon by a PHOSITA. *See Markman*, 52 F.3d at 986 ("The focus [in construing disputed terms in claim language] is on the objective test of what ***one of ordinary skill in the art at the time of invention*** would have understood the terms to mean.") (emphasis added). Especially where there is a dispute about the teaching of the specification to a PHOSITA, extrinsic evidence "can shed useful light on the relevant art … in determining the legally operative meaning of claim language." *Phillips*, 415 F.3d at 1317). Without applying the proper *Phillips* analysis, and in the absence of intrinsic or extrinsic support that the scope of original claim terms was changed, Defendant's Motion must fail.

13

C.     The Amended Claims Are "Substantially Identical" in Scope to the Original Claims

Because the Court must interpret the claim scope of both the original and amended claim terms, Infinity offers its proposed claim constructions for both of these terms. *See*, *e.g.*, *Convolve, Inc.*, 812 F.3d at 1325. Since Defendant did not apply *Phillips* or propose claim constructions, Infinity makes its best guess as to how Defendant would have the Court construe the claim terms. The chart of proposed constructions is followed by intrinsic and extrinsic evidence supporting Infinity's proposed constructions and proving that the reexamination amendments did ***not*** alter the scope of the original claims. In fact, the amendments made during reexamination were only included for clarifying purposes and in no way substantively changed the scope of the claims.[16]

*1.   "generic send/receive driver communications software"*

| Term / Claim(s) | Infinity's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| **Original Claim Term:** "send/receive driver communications software" | "generic send/receive driver communications software" | Not Provided |
| **Amended Claim Term:** *"generic send/receive driver communications software"* | "generic send/receive driver communications software" | Not Provided |

As shown in the chart above, Infinity proposes that the original term "send/receive driver communication software" is inherently limited to "generic," and thus the amendments during reexamination did not change the claim scope. Defendant's position, that the original claims included specifically tailored, non-generic software, is unsupported. Based on an analysis of the intrinsic and extrinsic evidence under *Phillips*, however, Infinity's position is correct.

_____

[16] Courts hold that amendments are not "substantive" if they are mere clarifications that make specific what was always implicit or inherent in the patent claims. *See*, *e.g.*, *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1115 (Fed. Cir. 1996) (denying intervening rights defense where the substitution of the word "'housing' for 'furnace' merely restated the scope" of the original claim elements).

As an initial matter, the specification makes clear that the very objective of the Patents-in-Suit is to the utilize generic, standard protocols and send/receive communications software for existing Faxes and PCs. Being the invention's primary objective, the Court cannot construe the claim terms in some contradictory manner that Defendant may propose. Importantly, the specification makes clear that the very object of the invention is to solve a problem in the prior art caused by non-generic communication software. (*See* '811 Patent at 1:31-45); *see also, Eberle v. Harris*, No. CIV.A.03-5809(FLW), 2010 WL 6281563, at *11 (D.N.J. June 30, 2010) ("While a patent owner may disavow a different scope, thereby redefining such commonplace terms, he may do that only by clearly stating as much in the specification or by 'describ[ing the more limited scope] as the advantage and distinction of the invention ….'") (quoting *On Demand Mach. Corp. v. Ingram Industries, Inc.,* 442 F.3d 1331, 1340 (Fed. Cir. 2006)).  It is further manifest that the type or brand of the PC and the Fax is immaterial. (*See id*. at 4:59-60) ("The PC, which may be any type of computer …"); (*see also, id*. at 5:17-20). The specification also discloses that the communications and/or signaling between the PC and the Fax is generic. (*See id*. at 8:56-59) ("*[t]he circuitry* of the present invention provides all the necessary signal conditions which lead the PC and local facsimile machine to believe that they are communicating with one another over a telephone line") (emphasis added).  That the Examiner during reexamination may have had a different interim understanding under a different claim construction standard does not control here. *Mobile Media* at 762.

The specification goes on to further indicate that the "send/receive communications software" must be "generic." This is clearly disclosed in Figure 2g and the text corresponding to this figure. (*See* '811 Patent at 8:4-26). As illustrated in Figure 2g (reproduced below), the "send/receive communications software" is identified interchangeably as "*generic* send/receive

driver communications" software and simply as "send/receive driver communications software" in the portion of the specification that describes the Figure 2g.  (*Id*. at 8:4-26).

### 2. *"using an unmodified standard protocol"*

The second group of claims was amended in reexamination to recite "using an unmodified standard protocol for" preceding "shifting the personal computer to..." in the corresponding originally-issued claims of the '811 Patent. As shown above, Infinity proposes that the original claim term inherently (although not explicitly) had the same meaning as the amended claim term, i.e. "using an unmodified standard protocol for shifting the personal computer …." Again, Defendant provides no proposed construction for the original or amended terms. It is possible that Defendant's position is that only the amended claim term included "using an unmodified standard protocol." Infinity's position is the only one supported by the intrinsic and extrinsic evidence.

| Term / Claim(s) | Infinity's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| **Original Claim Term:** "shifting the personal computer …" (Claims 7-17 of U.S. Patent No. 6,894,811B1) | "using an unmodified standard protocol for shifting the personal computer … " | Not Provided |
| **Amended Claim Term:** "using an unmodified standard protocol for shifting the personal computer … " (Claims 7-17 of U.S. Patent No. 6,894,811C1) | "using an unmodified standard protocol for shifting the personal computer … " | Not Provided |

As with the "send/receive driver communication software" terms, the specification clearly discloses that the invention involves interfacing a PC with a Fax,[17] that the type of the PC[18] and the Fax [19] are immaterial, and that standard protocols are used for communications between a PC

---

[17] *See* '811 Patent at 1:39-40 ("It is, therefore, a principal object of the present invention to provide a circuit for interfacing a PC and a facsimile.").

[18]  *See* '811 Patent at 4:59-60 ("The PC, which may be any type of computer…").

[19] *See* '811 Patent at 5:17-20.

and a Fax.[20]   A PHOSITA would understand from these disclosures that the "genericness" of the PC and Fax communication requires the use of unmodified standard protocols, such as those defined by international technical standards bodies,[21] because the PC and Fax could not be expected to reliably communicate if the protocols were specific to one or the other or if the protocols were modified to be different from standard protocols.  (*See* Levitt Decl. at ¶¶ 39-46; Zatkovich Decl. at ¶ 9-10.) For this reason, the claims, as originally issued, inherently required use of "unmodified standard protocols," meaning that addition of that phrase to the reexamined claims did not alter their scope or meaning.

In addition to being taught by the specification, the prosecution history of the reexamined "unmodified standard protocol" claims is also consistent with these claims having a scope and a meaning that was not changed during reexamination. Referring to the claims pending in the application prior to its original issuance, the patentee described communications between the PC and the Fax as involving, "data transferred in a ***conventional*** way, and ***without*** manipulation, or ***modification*** of the original signals."[22]

    D.    <u>Defendant's Absolute Intervening Rights Argument Fails as a Matter of Law</u>

        *1.   Absolute Intervening Rights Is Not a Valid Defense for Method Claims*

The "absolute" intervening rights doctrine is not applicable to method claims – the only type of claim asserted in this matter.[23] Absolute intervening rights only applies when the claims in suit cover *tangible* products as opposed to *intangible* methods or processes. More specifically,

---

[20] *See* '811 Patent at, *e.g.*, 5:48-51 ("The computer (PC) is operated … to enter into a standard protocol with the facsimile machine").

[21] *See, e.g.,* Group I, II and II fax type references, '811 Patent at 5:22-25.

[22] See Halderman Decl., Exh. B, September 2, 1998 Amendment (emphasis added).

[23] See 35 U.S.C. § 100 (defining "process" as meaning "process, art or method, and includes a new use of a known process, machine, manufacture, composition of matter, or material").

absolute intervening rights can only provide a defense for "apparatus" claims, i.e., claims that provide patent protection for *tangible* products, and not "process" or "method" claims, which consist of a series of acts or steps.[24] *See In re Kollar*, 286 F.3d 1326, 1332 (Fed. Cir. 2002) ("The Board also erred in failing to recognize the distinction between a claim to a product, device, or apparatus, all of which are tangible items, and a claim to a process, which consists of a series of acts or steps.").

There are two distinct intervening rights doctrines – absolute intervening rights and equitable intervening rights – both of which derive from the second paragraph of 35 U.S.C. § 252. A review of 35 U.S.C. § 252 demands that the absolute defense be restricted to "apparatus" claims – that is, claims which protect specific, tangible things.[25] The second paragraph of 35 U.S.C. § 252 consists of two sentences that "provide [] for two separate and distinct defenses under the doctrine of intervening rights." *BIC Leisure Prod., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1220 (Fed. Cir. 1993). As shown below in full, the first sentence describes the defense of absolute intervening rights, which Defendant asserted in the Motion. *Id.* The second sentence describes the defense of equitable intervening rights, which Defendant deliberately did not raise. *Id.* at 1221.

> [**Absolute Intervening Rights**] A reissued patent shall not abridge or affect the right of any person … to sell to others to be used, offered for sale, or sold, the *specific thing* so made, purchased, offered for sale, used, or imported unless …

> [**Equitable Intervening Rights**] The court before which such matter is in question may provide for the continued manufacture, use, offer for sale, or sale of *the thing* …, and the court may also provide for the *continued practice of any process*

---

[24] Apparatus claims include product, device and system claims. *See Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990) ("[A]pparatus claims cover what a device is, not what a device does.") (emphasis in original); *see also epicRealm, Licensing, LLC v. Autoflex Leasing, Inc.*, 492 F. Supp. 2d 608, 627 (E.D. Tex. 2007).

[25] The intervening rights analysis for a reexamined patent is the same as for a reissued patent under 35 U.S.C. § 252. *See Predicate Logic, Inc. v. Distributive Software, Inc.*, 544 F.3d 1298, 1304 (Fed. Cir. 2008) ("[A] claim that is amended in reexamination has the same effect as a claim that is amended in reissue proceedings under 35 U.S.C. § 252.").

patented by the reissue that is practiced ….

35 U.S.C. § 252 (emphasis added).

  The parties do not dispute that the Patents-in-Suit include only "method" or "process" claims. As a result, Defendant's intervening rights defense must fail as a matter of law.  As shown above in bold and italics, the second paragraph of 35 U.SC. § 252 explicitly provides that the *equitable* defense applies to the "continued practice of any ***process*** patented by the reissue," whereas the *absolute* defense does not include a similar provision, but rather applies to a "specific thing" – i.e., a tangible product. *Id.* (emphasis added). Because the "process" provision is omitted from the absolute defense but included in the equitable defense, the plain meaning of the statute is clear. *See Lawrence v. City of Phila., Pa.*, 527 F. 3d 299, 316-17 (3d Cir. 2008) ("The plain meaning of the text should be conclusive, except in the rare instance when the court determines that the plain meaning is ambiguous."). That is, the defense of absolute intervening rights does *not* apply to process or method claims.

  Given the clear meaning of the statute, it is not surprising that district courts have overwhelmingly concluded that the defense of absolute intervening rights applies only to apparatus claims and not to method or process claims. *See NetAirus Techs., LLC v. Apple, Inc.*, No. LA CV10-03257 JAK, 2013 WL 3089061, at *4 (C.D. Cal. May 23, 2013) ("The language 35 U.S.C. § 252 that gives rise to absolute intervening rights 'appears not to relate to a patented process,' because processes are only addressed in the statute's discussion of equitable intervening rights."); *Univ. of Va. Patent Found. v. Gen. Elec. Co.*, 792 F. Supp. 2d 904, 916 (W.D. Va. 2011) ("No provision for a patented process is made in the absolute intervening rights section. By comparison, the statutory language governing equitable intervening rights explicitly allows 'for the continued practice of any process patented by the reissue that is practiced, or for the practice of which substantial preparation was made, before the grant of the reissue.'") (quotation omitted); *Rohm &*

19

*Haas Co. v. Chem. Insecticide Corp.*, 171 F. Supp. 426, 432 (D. Del. 1959) ("The patent in suit covers a process— not a product. The first sentence and one-half of the second sentence of 35 U.S.C. § 252 appears not to relate to a patented process.").

> 2. *Absolute Intervening Rights Is Inapplicable to Activity Post-Issuance Except as to "Specific Things," Not "Products"*

In its Opening Brief, ODA asserts that Infinity cannot recover for activity after issuance of the reexamination certificate "to the extent that activity related to products in existence before the issuance of the reexamination certificates." Brief at 1. That application of the statute is overstated. As set forth above, absolute intervening rights is only applicable to "specific things" in existence. *See* 35 U.S.C. Section 252. Thus, the mere fact that a model number was in existence prior to the date of issuance does not relieve liability if the specific thing was not yet made, used or sold as of that date.

### V.   CONCLUSION

For the above stated reasons, Infinity respectfully requests that the Court deny Defendant's Motion and hold that the affirmative defenses of "pre-issuance damages" and "intervening rights" are inapplicable to this matter because the amendments made during reexamination did not affect the scope of the claims. Infinity further requests that the Court hold that the defense of "absolute intervening rights" is inapplicable to this matter because Infinity has only asserted method claims.

Dated: August 10, 2018                    Respectfully submitted,

                                          */s/   William J. Rhodunda, Jr.*
                                          William J. Rhodunda, Jr. (No. 2744)
                                          Chandra J. Williams (No. 4907)
                                          Rhodunda & Williams, LLC
                                          1220 N. Market Street, Suite 700
                                          Wilmington, DE 19801
                                          Telephone: (302) 576-2000
                                          Facsimile:  (302) 576-2004
                                          bill@rawlaw.com

20

Andrew G. DiNovo (admitted *pro hac vice*)
Nicole E. Glauser (admitted *pro hac vice*)
Gabriel R. Gervey (admitted *pro hac vice*)
DiNovo Price LLP
7000 N. MoPac Expressway, Suite 350
Austin, Texas 78731
Telephone: (512) 539-2626
Facsimile:  (512) 539-2627
adinovo@dinovoprice.com
nglauser@dinovoprice.com
ggervey@dinovoprice.com

**Counsel for Plaintiff**
**Infinity Computer Products Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2018 a copy of the foregoing was served by the Court's

ECF system on the attorneys of record.

*/s/   William J. Rhodunda, Jr.*
William J. Rhodunda, Jr.

21