# EXHIBIT 2

9-26-202 3:10PM         FROM

PATENT
DOCKET: B INFINITY - 3.0
IN THE UNITED STATES PATENT AND TRADE MARK OFFICE

| | |
|---|---|
| In re the Application of<br>BRUCE NACHMAN<br>Application No. 08/669, 056<br>Filed JUNE 24, 1996<br>For: INTERFACE CIRCUIT FOR<br>UTILIZING A FACSIMILE COUPLED TO A<br>PC AS A SCANNER | Group Art Unit: 2622<br><br>Examiner: Cheukfan Lee<br><br>Sent To Fax No. 703 872 9314, for formal submission to the Commissioner of Patents and Trademarks, Washington, DC 20231 on:<br>May 25, 2002<br>Marvin J. Nachman<br>Signature _____ |

This Amendment is in Response to the Office Action of 01/19/2000, and the Office communication of 4/25/2002.



Hon. Commissioner of Patents and Trademarks
Washington, DC 20231

**Amendment**

In response to the Office Action Summary of 1/19/2000 please amend the above identified application as follows.

**In the claims:**

Please cancel claims 30, 31, 49, 50, 51 and 55.

Please amend claims: 27-29, 32-36, 40, 41, 43, 52-54, as follows:

Claim 27. (Amendment 3) - A method of creating a scanning capability from a facsimile machine to a computer; with scanned image digital data signals transferred through a passive link, without interception from the facsimile machine to the computer, comprising the steps of:

by - passing or isolating the facsimile machine and the computer from the public network telephone line and;

coupling the facsimile machine to the computer;

conditioning the computer to receive digital facsimile signals representing data on a scanned document;

1

# FACSIMILE COVER PAGE

Date: 9/26/02
Time: 13:44:22
Page: 1 of 24

To: Cheukfan Lee
Company: U.S. Patent Office
Fax #: 1 703 746 9314

From: MN
Fax #: 6105251089

Message:

Please forward to: Group Art 2622, Attention: Examiner Cheukfan Lee

The attached Amendment for the Office Communication of 4/25/02 was previously faxed to the Patent Office in accordance with the Auto - Reply Fascimile Transmission acknowledgement dated 5/22/02. A copy is attached herewith.
The original transmission was never received by Examiner Cheukfan Lee, Group Art 2622, and approximately 4 months has past. Ms. Lee has therefore requested another copy to be faxed to your office and forwarded to her attention, Group Art 2622. Her tel.: No. is 703 305 4867.

This Amendment is in regard to the Application of BRUCE NACHMAN, ApplicationNo. 08/669,056, Filed June 24,1996, For:INTERFACE CIRCUIT FOR UTILIZING A FACSIMILE COUPLED TO A PC AS A SCANNER.

Resent by,
Marvin J. Nachman,
Executor, Co - inventor
Date: 9/26/02
Tel.: 610 5251089

© Copyright Cheyenne Software, Inc. *BitWare Plus*

9-26-202 3:09PM          FROM                                                                 P.2

05/22/02 17:18:56              USPTO->                    RightFAX              Page 001

TO: Auto-reply fax to 6105251089  COMPANY:

# Auto-Reply Facsimile Transmission



**UNITED STATES PATENT AND TRADEMARK OFFICE**

TO:                     Fax Sender at 6105251089

Fax information
Date Received:          5/22/02 4:54:55 PM [Eastern Daylight Time]
Total Pages:            22 (including cover page)

ADVISORY: This is an automatically generated return receipt confirmation of the facsimile transmission received by the Office. Please check to make sure that the number of pages listed as received in Total Pages above matches what was intended to be sent. Applicants are advised to retain this receipt in the unlikely event that proof of this facsimile transmission is necessary. Applicants are also advised to use the certificate of facsimile transmission procedures set forth in 37 CFR 1.6(a) and (b). 37 CFR 1.6(f). Trademark Applicants, also see the Trademark Manual of Examining Procedure (TMEP) section 702.04 et seq.

Received
Cover
Page
========>



**FACSIMILE COVER PAGE**

Date:       5/22/02
Time:       16:38:26
Pages:      22

To:         Chouldon Lee
Company:    U.S. Patent Office
Fax #:      1 703 746 7240

From:       MN
Fax #:      6105251089

conditioning the facsimile machine to transmit digital signals representing data on a scanned document to the computer, said computer being equipped with send / receive driver communications software enabling the reception of scanned image signals from the facsimile machine, said transmitted digital facsimile signals being received directly into the computer interface through the passive link, thereafter, said computer processing the received digital facsimile signals of the scanned document as needed.

Claim 28. ( Amendment 3 ) - The method of performing a scanning function to a pre-existing facsimile modem, connected through a passive link to a facsimile machine, said facsimile modem being internal or external to a computer, in order to enable a scanning function, said facsimile machine and fax modem are connected when transferring scanned signal data, without interception of said signals between the facsimile machine and the fax modem, said facsimile machine and fax modem being isolated from the public network telephone line, and by which the establishment of the transmission state within these types of connections include one of:

a) External initiation including ringing, constant current, on / off hook, or any typical telephone or digital signaling protocols.

b) Internal initiation, including setting a manual receive mode, setting a specialized mode, including, "computer mode" or by pressing a start button on the facsimile machine; or combination of a and b.

29, ( Amendment 3 ) - The method of claim 27 to create a scanning function from a facsimile machine to a computer by transfer of non-intercepted signals from a facsimile machine, through a connection containing data, representative of scanned images, said facsimile machine, by-passing or isolated from a public network telephone line, and connected to an appropriate receiving port of a computer, or other office product capable of receiving and processing said signals.

Claim 32. Amendment 2. - The method of claim 27, including transferring a parallel data source signal of a scanned image from said facsimile machine to said computer.

Claim 33. Amendment 2. - The method of claim 27, including transferring a serial data source signal of a scanned image from said facsimile machine to said computer.

Claim 34. Amendment 2. - The method of claim 27, including replacing the digital signal with an analog scanned image source signal from the facsimile machine to said computer through a modem interface.

Claim 35. Amendment 2 - The method of claim 53 for creating a printing function from a computer to a facsimile machine by sending nonintercepted, data signals, representative of a document to be printed from a computer, and connected to an appropriate receiving port of a facsimile machine, said facsimile machine and computer by - passing or isolated from one or more public network telephone lines.

Claim 36. Amendment 3 - A method of making a facsimile machine operable as a scanner or printer for a personal computer, each of the facsimile machine and personal computer for communicating normally using at least one public network telephone line, comprising the steps of:

configuring the facsimile machine to communicate with the personal computer using a digital connector port of the facsimile machine, and personal computer, with both the facsimile machine and personal computer isolated from said at least one public network telephone line:

arranging the facsimile machine to be in a digital connection mode,: and

shifting the personal computer to a connection mode, for sending or receiving non intercepted digital signals for scanning or printing between the computer and the facsimile machine, in a facsimile machine format, using a digital connector port of the personal computer, said computer being equipped with send / receive driver communications software enabling the transfer of said scanning or printing signals between the computer and the facsimile machine.

Claim 37. (Amended) The method of claim 28 including using RJ 11 connector ports to interface between the facsimile machine and the personal computer

*I6*
*sus J3*

Claim 40. (Amendment 2) -The method of claim 36, using, RS 232, parallel or other suitable digital port type connectors to interface between said facsimile machine and said computer.

*I7 sus Ki*

Claim 41. (Amendment 2) - The method of claim 27 further comprising optically recognizing the scanned data and converting the scanned data into character codes.

*I8*
*sus J4*

Claim 43. (Amendment 2) - A method of using a facsimile machine as a scanner or printer for a personal computer, each of the facsimile machine and personal computer for communicating using telephone types of circuits, said facsimile machine and computer being isolated from the public telephone network, comprising the steps of:

   (a) Configuring the facsimile machine to communicate with the personal computer using the facsimile machine, and by - passing or isolating the facsimile machine and computer from the public telephone network,

   (b) arranging the facsimile machine to be in a simulated off-hook condition, or connection mode; and

   (c) shifting the personal computer to an off-hook condition, or connection mode for sending or receiving nonintercepted signals in facsimile formats through a passive link between the personal computer and the facsimile machine,

   (d) said computer being equipped with send / receive driver communications software enabling the transfer of said scanning or printing signals between the computer and the facsimile machine.

*I9 cont*
*sus J5*

Claim 52 (amended) - A method of using a facsimile machine with a computer, one or both of which being connected to a telephone line, such that said facsimile machine, operates as a scanning device, when isolated from the telephone line, comprising the steps of:

   (a) coupling the facsimile machine to the computer;

   (b) generating a facsimile machine signal, whereby the computer is conditioned to receive signals representing data on a scanned document.

4

(c) generating a signal to simulate an off - hook condition, or connection mode, providing a direct path, whereby the facsimile machine is conditioned to transmit signals without interception through the passive link to the computer, representing data on a scanned document.

Claim 53. (amended) A method of using a facsimile machine with a computer, one or both of which being connected to a telephone line, such that said facsimile machine, operates as a printing device, when isolated from the telephone line, comprising the steps of:

(a) coupling the facsimile machine to the computer through a passive link;

(b) generating a signal representative of a facsimile machine communications signal, whereby the computer is conditioned to transmit signals representing data on a document to be printed.

(c) generating a signal to simulate an off - hook condition or connection mode, providing a direct path, whereby the facsimile machine is conditioned to receive non intercepted signals through the passive link representing data from the computer of a document to be printed.

Claim 54. -- (Amendment 2) - A method of making a facsimile machine operable as a scanner or printer for a computer, each of the facsimile machine, and computer for communicating, normally using at least one public network telephone line, comprising the steps of:

configuring the facsimile machine to communicate with the personal computer through a passive link using a digital connector port on the facsimile machine, and a digital connector port on the computer, with both the facsimile machine and computer by - passing or isolated from said at least one public network telephone line: and

arranging the facsimile machine to send or receive digital data signals, and

coupling the digital data signals through the passive link to the personal computer, and the facsimile machine, said computer equipped with send / receive driver communications software enabling the reception of scanned image signals from the facsimile machine, or the sending of computer data to the facsimile machine, for printing.

**In the Specification:**

Due to a typographical error, please change page 17, at the end of line 8,

Change from "6 and"

Change to "76 receives the digital image and it is"

**Claims 38, 39, 42, 44-48 that are not amended are listed below.**

Claim 38. (Not Amended) - The method of claim 36 including using RRS 232 connector ports to interface between the facsimile machine and the personal computer.

Claim 39. (Not Amended) - The method of claim 36 including using parallel connector ports to interface between the facsimile machine and the personal computer.

Claim 42. (Not Amended) – The method of claim 36 further comprising optically recognizing the scanned data and converting the scanned data into character codes.

Claim 44 – (Not Amended) The method of claim 43 including using serial data transmissions between the facsimile machine and the personal computer.

Claim 45 – (Not Amended) The method of claim 43 including using parallel data transmissions between the facsimile machine and the personal computer.

Claim 46 (Not Amended) - The method of claim 43 including using analog data transmissions between the facsimile machine and the personal computer.

Claim 47 (Not Amended) - The method of claim 43 using analog data transmissions, or digital serial, or parallel signals, between the facsimile machine and the personal computer.

Claim 48 (Not Amended) - The method of claim 43 further comprising optically recognizing the scanned data and converting the scanned data into character codes.

Received from < > at 9/26/02 3:05:42 PM [Eastern Daylight Time]

**REMARKS /ARGUMENTS**

Claims 38, 39, 42, 44-48 are not amended and remain in this Application.

Claims 30, 31, 49, 50, 51 and 55 have been cancelled.

Claims: 27-29, 32-37, 40, 41, 43, 52-54, have been amended.

The following responses are provided to the Examiners numbered paragraph comments:

Response to paragraph 1

Please see additional arguments provided herein, and detailed in response to

paragraph 4

Response to paragraph 2

Claim 40 has been amended to reflect " and the computer".

Response to paragraph 3

Claims 27-29, 32 - 35, 40 and 43, and 52 - 54, have been amended to comply with 35 U.S.C. 112, second paragraph, as noted herein.

Claims 30, 31, 49, 50, 51 and 55 have been canceled, as noted above.

Response to paragraph 4

Regarding claim 27, see the amended claim 27, and the following discussion.

1) Perkins discloses using a facsimile machine (transceiver) as a scanner or printer for a computer as does the Applicant. However, the Apparatus used by Perkins' is much more complex and expensive than the simplified methods used by the Applicant in achieving a scanning and a printing function when using a facsimile machine connected to a computer. The Applicant creates a passive link between the facsimile machine and the computer in order to accommodate the signal transfer for printing or scanning. Therefore, the Applicant does not require any intervening apparatus as does Perkins. The applicant therefore believes, Perkins did not anticipate the methods used by the Applicant. And the Applicant therefore believes, there is no infringement.

2) Perkins card when installed in a computer would, because of its design, use a PSTN type connector, as defined by Perkins to connect the computer to the facsimile

7

machine. This type of connection can only transfer an analog signal (not a digital signal), as the discussion herein details.

Both Perkins' and the Applicant isolate from the telephone line, however, this is but a single step in an otherwise very different method of accomplishing a scanning and a printing function when using a facsimile machine and a computer.

The following denotes some significant differences between Perkins' Patent and the Applicant's Patent Application. Also described are major limitations to
Perkins' Patent, i.e. Perkins' device 3 design or card incorporating device 3 is limited to the transfer of only analog signals ( not digital signals) from his device 3 to the facsimile transceiver, and his design can receive only analog signals (not digital signals) from the facsimile transceiver to his device 3. In addition, Perkins' device 3 or card design requires a modem to be integrated into it in order to transfer signals for scanning or printing as part of his computer and facsimile transceiver interface. In contrast, the Applicant can transfer digital signals between the facsimile transceiver and the computer without the need for a modem at the computer interface, in accordance with the following quotation from the Applicants' Patent Application, page 16, lines 22 through page 17, line 14, and Fig 2G.

"**The provision of the scan and print functions internal to the facsimile machine may also be accomplished by utilizing the analog output of the optical scanning circuit 75 of the facsimile machine (Fig. 2G). The analog signals are processed by the control/modem circuitry 76 where they are converted into a digital serial signal and then transmitted through the RS 232 sending interconnect port, the signal is then received by an RS232 connector at the PC. The aforementioned procedure utilizes unused signal lines which are available on most modem chips such as the Rockwell chip series.**

A send and receive driver software package then implements the following action. The receive driver software accepts the digital image for storage or processing as

8

appropriate. This send /receive driver communications software package also has the ability to send a digital image to the facsimile machine for printing purposes. The facsimile machines control / modem circuitry 76 receives the digital image and it is then processed by the print driver 77 for printing. This linkage method for scanning and printing is particularly useful for a computer without a fax modem." End of quote.

The following is a list of claims provided by the Applicant which do not require a fax modem at the computer, see (claims 27,29, 32, 33, 35, 36, 40, 43, 44, 45, 47, 52, 53, and 54). In addition, the applicants Patent Application shows that a modem is not required at the computer in Figures 2F, 2G, and 2H.

Perkins col. 9, lines 29-33, requires the use of a modem, ring generator means, line loop detector, control means comprising microprocessor 10, all of which are within the configuration of device 3. Perkins' device 3 is placed on a card internal to the computer in order to enable the transfer of analog signals between the facsimile transceiver and the computer (not digital signals ). See Perkins Column 3, lines 63 - 65, which clearly defines a PSTN (Public Switch Telephone Network)- type analog connection to the facsimile transceiver.

For example, when in the printing mode, to enable the transfer of a signal from the computer to the facsimile transceiver, Perkins' device 3 must convert a digital signal into an analog signal, which passes through a PSTN type connector, in order to be received by the facsimile transceiver. See Perkins, col. 3, line 59 through col. 4, line 2, and

Perkins Fig 1.

It is evident that Perkins does not envision a direct transfer of digital signals between the facsimile transceiver and the computer. At no time does Perkins state that the facsimile transceiver is equipped to receive or transmit digital signals, or that the facsimile

9

transceiver is configured with a connector suitable for the receipt or transfer of digital signals, such as an RS 232 connector. Nor is Perkins' device 3 designed to transmit digital signals directly to the facsimile transceiver. Therefore, Perkins is limited to transferring only analog signals between the external connection of his card device 3, when it's located in the computer, and the facsimile transceiver.

Perkins' description for transferring scanning or print signals are described by Perkins in col. 4, line 3 to col. 5, line 12. Specifically print signals are described in col. 4, line 41 to line 47. Perkins states "The line interface unit 7 then sends the modulated data to the facsimile transceiver 1 via the connector 4". As noted earlier, connector 4 as defined by Perkins is a PSTN type connector which accepts standard analog transmission signals not digital signals.

In effect, in the print mode Perkins' device 3 must convert digital signals to analog, which are the only signals that can be received by the facsimile transceiver for printing when using Perkins' Patent.

Scanning is described in col. 5, line 1 through line 12 of Perkins' Patent. According to Perkins, "Once communication is established, the facsimile transceiver 1 sends modulated signals representing the scanned documents via the connector 4 to the line interface unit 7 and to the modem 9 where the modulated signals are demodulated".

In Perkins' scanning application the signal which is transferred between connector 4 and line interface unit 7 when Perkins card is installed in the computer is a standard analog facsimile transmission. After the analog facsimile transmission data enters the card installed in the computer through line interface unit 7, the modulated signals are demodulated by modem 9, and then transferred by Perkins' microprocessor 10

(located on his card), as digital information. Perkins col. 9, lines 31 to 33 states "The card would have a connector for the facsimile transceiver to connect the computer directly to

the facsimile transceiver". The card connector must therefore be one of a PSTN type, in order to transfer analog signals between the facsimile transceiver and the computer, because the facsimile transceiver has not been modified by Perkins to send or receive digital signals.

In contrast, the Applicant has defined within his Specification, as noted above a method of transferring digital signals between the facsimile transceiver and the computer which is very different from Perkins. And most significantly lists many claims which do not require a modem at the computer to send or receive data for scanning or printing as does Perkins with his card or device 3.

In claims where the Applicant transfers an analog signal, it is always to an existing computer modem either external or internal to the computer, said computer modem is not required to be provided by the Applicant, whereas Perkins because of his design must provide a modem as part of his card or device 3.

Regarding the Examiner's comment for claim 27, with reference to Perkins, as noted in the last sentence of the Examiner's comments, "The direct connection of the facsimile transceiver (1) and the computer (2) is isolated from the telephone line."

It is agreed that both Perkins and the Applicant isolate from the telephone line. However, this action represents only a single step in an otherwise completely different way of enabling the transfer of digital and analog signals between a facsimile transceiver and a computer for scanning or printing, and is therefore believed to be non - infringing, as described herein.

In addition to the above information, please consider the following:

When Perkins' device 3 receives the facsimile analog transmission signals for scanning through the PSTN type connector in the external mode, the modulated signal is demodulated by device 3 and subsequently transmitted as a digital signal to the RS 232

11

port of the computer where it is transmitted through the I/O Bus and is processed by the receiving circuits, (i. e. UART, CPU ) of the computer.

When Perkins places his device 3 on a card internal to the computer, the same process noted above occurs. In this internal configuration, facsimile transmission data never enters the computer I/O Bus until after it is processed by the device 3 card circuits into digital data, thereafter, the flow of data transfers to the I/O Bus and is processed by the computer circuitry.

→ It is therefore evident that Perkins' device 3 intercepts the flow of data before it is transmitted to the computer circuits, in order to convert the analog signal into a digital signal format acceptable to the computer. Hence, even though circuitry of device 3 is placed in a card within the box containing the computer it should be regarded as a peripheral device to the computer which processes data before it is transmitted to the I/O bus of the computer.

→ Contrary to the above, when the Applicant transfers digital data from the facsimile transceiver through a passive link for scanning to the computer, the non intercepted data enters through the RS 232 type connector port of the computer and passes directly to the I/O Bus and is processed by the receiving circuits (i. e. UART, CPU ) of the computer, providing a true non intercepted digital signal between the facsimile transceiver and the computer.

In effect, the Applicant's method does not use intermediary peripheral circuitry for signal interception, resulting in demodulation or modulation which is required by Perkins with his card or device 3.

Consequently, the Applicant's claims 27- 29, 32 - 48, and 52 - 54 are different than the prior art as required by 35 USC 102e. Not only is the Applicant's invention different, but his invention is not obvious, in keeping with the requirement of 35 USC 103. This

12

difference is meaningful, not found in the prior art and provides real benefit. For example, the Applicant's invention can be built for at least half the cost of the prior art, since it does not require any of the additional hardware and software ( loop detector circuit 8, modem 9, microprocessor 10, control program, device 3 controls, display 12, and keypad 13 ), that is required to be provided by the prior art of Perkins. The prior art never suggests or teaches the inventive methods of the Applicant as stated herein, for transferring digital and analog signals in order to create a scanning or a printing function between a computer and a facsimile transceiver. In addition, the significance of not having to modify or manipulate the standards signals generated by the facsimile transceiver or computer, sets the Applicant apart from Perkins, and all other known patents.

Regarding claim 28, this claim has been amended to comply with the Examiners comment, and in accordance with the discussion herein, for paragraph 4, claim 27, above. Please note that the "computer mode," is inherently a function of all computers, and is used by the Applicant in an otherwise completely different and simplified inventive method than Perkins for enabling the transfer of digital and analog signals between a facsimile transceiver and a computer for scanning or printing, and is therefore believed to be non - infringing, as described herein.

Regarding claim 29, this claim has been amended to comply with the Examiners comment, and in accordance with the previously referenced discussion for claim 27, herein.

Regarding claim 30, this claim has been deleted.

Regarding claim 31, this claim has been deleted.

Regarding claim 35, this claim has been amended to comply with the Examiners comment.

Regarding claim 36, See the amended claim 36, and discussion for paragraph 4, claim 27, and as follows. Perkins and the Applicant use the public telephone line for communication. However, this action appears as a single step in an otherwise completely different way of enabling the transfer of digital and analog signals between a facsimile

transceiver and a computer for scanning or printing, and is therefore believed to be non-infringing, as described herein. Please note the amended claim 36, now specifies a digital connection mode, and allows for the digital signals to be transferred without interception between the facsimile machine and the computer, which Perkins prior art cannot do, as stated in the referenced discussion herein.

Regarding claims 37, 38, and 40, see response to paragraph 4, discussion for claim 27. The Perkins card, as noted above can only be equipped with a PSTN type connector, which is capable of transferring analog signals to the facsimile machine, which must be equipped with a PSTN type connector for receiving or sending said analog signals. There would be no purpose in equipping Perkins' card with an RS 232 connector, since the circuit described by Perkins can only transmit an analog signal to the facsimile transceiver through a PSTN type connector and in Perkins design the facsimile transceiver has not been enabled to receive a digital signal. Based on this analogy, the Examiner's comment that " the connector (col. 9, line 31) is inherently a RS 232 or RJ 11 port", is not justified with respect to the RS 232 connector.

Regarding claims 41 and 42, the Patent Examiner states " It is inherent that the scanned data is optically recognized and converted into character codes at the computer (2)," It is in fact not necessary to convert a scanned document with optical character recognition software in the computer, unless the user has a need to edit said document. A scanned document may remain resident in a computer as an image of text, photograph or line art, etc., for storage or for future facsimile transmission or E-mail, without the need to optically recognize it. Therefore, it is not inherent, as suggested by the Examiner, that said scanned data would require optical recognition. It is therefore requested that claims 41 and 42 covering optical recognition be allowed.

14

Regarding claims 43, 52 and 53, see the discussion herein in paragraph 4, with respect to Perkins, and the inventive differences stated by the Applicant.

Regarding claim 44, see the following, and discussion above for differences in the way the Applicant and Perkins use a serial data port. Most computers are equipped with serial data ports for peripheral device usage such as a printer.

However, the Applicant employs the use of the serial data port when serial data is transferred through the facsimile transceivers serial data port and passively linked directly to the computer's serial data port. Perkins only uses the serial data port to connect from his device 3 to the computer. See Perkins column 4, lines 14 - 17, and lines 41 - 47. In addition, Perkins never suggests that the facsimile transceiver is equipped with a serial data port.

Regarding claim 47, see the discussion herein, and as noted above: The digital serial data being transferred is not intercepted by the Applicant as it is with Perkins' card, or device 3.

Regarding claim 48, see the response to claim 41 and 42 above, with respect to the use of optical character recognition software.

Regarding claims 49 and 50, both have been cancelled.

Regarding claims 54 and 55, claim 55 has been cancelled. See the discussion and additional information provided herein for claim 27, which is applicable to claim 54.

In view of the foregoing discussion, it is apparent that the Applicant has invented a simpler way than Perkins, to accomplish a scanning and printing function, between a facsimile machine and a computer. Your indulgence is requested where redundancy exists, in order to further indicate differences between Perkins and the Applicants invention.

It is submitted that claims 27- 29, 32 - 48, and 52 - 54 patently distinguish over the art of record, and reconsideration of these claims, be allowed.

Reconsideration and early allowance of this application are respectfully requested, in view of the foregoing.

If, however, the Examiner is of the opinion that such favorable action cannot now be taken, it is requested that she telephone the undersigned Applicant in order that any outstanding issue may be resolved without the necessity of a further office action.

Respectfully submitted,

*Marhman*

Marvin J. Nachman,

Executor / CO - Inventor

315 - Saybrook Road

Villanova, PA 19085

Tel: 610 - 525 - 1089 Voice and Fax

16