IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INFINITY COMPUTER PRODUCTS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | C.A. No. 18-463-LPS-CJB |
| ) | |
| OKI DATA AMERICAS, INC., ) | |
| ) | |
| Defendant. ) | |

### OKI DATA'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF LIMITATION ON PRE-ISSUANCE DAMAGES AND ABSOLUTE INTERVENING RIGHTS

OF COUNSEL:
Marc R. Labgold, Ph.D.
Patrick J. Hoeffner
NAGASHIMA HASHIMOTO & YASUKUNI
12005 Sunrise Valley Drive, Suite 203
Reston, VA 20191
(703) 901-8860

John W. Shaw (No. 3362)
Jeff Castellano (No. 4837)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
jcastellano@shawkeller.com
arussell@shawkeller.com
*Attorneys for Oki Data Americas, Inc.*

Dated: August 24, 2018

**TABLE OF CONTENTS**

|     |     | Page |
| --- | --- | --- |
| I. | The Material Facts Are Not in Dispute | 1 |
| II. | The Claims Were Substantively Amended | 1 |
| III. | Infinity's Remaining Arguments Are Moot, But Nonetheless Fail on the Merits | 3 |
|     | A. Claim Construction Shows that the Claims Were Substantively Amended | 3 |
|     | B. Infinity's Attacks on ODA's Analysis Universally Fail | 4 |
|     | C. Absolute Intervening Rights Apply To Method Claims | 7 |
| IV. | Conclusion | 7 |

# TABLE OF AUTHORITIES

**Cases**

*Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247 (Fed. Cir. 1997) ........................................... 1

*Convolve, Inc. v. Compaq Computer Corp.*, 812 F.3d 1313 (Fed. Cir. 2016) ................................ 5

*Eberle v. Harris*, C.A. No. 03-5809 (FLW),
  2010 U.S. Dist. LEXIS 142485 (D.N.J. June 30, 2010) ................................................................ 1

*In re Kollar*, 286 F.3d 1326 (Fed. Cir. 2002) ................................................................................. 7

*Laitram Corp. v. NEC Corp.*, 163 F.3d 1342 (Fed. Cir. 1998) ....................................................... 1

*Minco Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109 (Fed. Cir. 1996) .......................................... 5

*MobileMedia Ideas, LLC v. Apple Inc.*, 209 F. Supp. 3d 756 (D. Del. 2016) ................................ 5

*MonoSol RX, LLC v. Biodelivery Scis. Int'l, Inc.*, C.A. No. 10-5695 (FLW/DEA),
  2015 U.S. Dist. LEXIS 128870 (D.N.J. Sep. 25, 2015) ................................................................ 7

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ................................................................ 7

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
  875 F.3d 1369 (Fed. Cir. 2017) ........................................................................................ 1, 5, 6, 7

*Purdue Pharma L.P. v. Endo Pharm., Inc.*, 438 F.3d 1123 (Fed. Cir. 2006) ................................. 6

*R+L Carriers, Inc. v. Qualcomm, Inc.*, 801 F.3d 1346 (Fed. Cir. 2015) ........................................ 1

*Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275 (Fed. Cir. 2010) ........................... 6

*Sonos, Inc. v. D&M Holdings Inc.*, 287 F. Supp. 3d 533 (D. Del. 2017) ....................................... 7

*Sw. Bell Tel. Co. v. Arthur A. Collins, Inc.*, 279 F. App'x 989 (Fed. Cir. 2008) ........................... 2

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831 (2015) ...................................................... 6

*Univ. of Va. Patent Found. v. GE*, 792 F. Supp. 2d 904 (W.D. Va. 2011) .................................... 7

*Yoon Ja Kim v. Earthgrains Co.*, 451 F. App'x 922 (Fed. Cir. 2011) ........................................... 2

**Statutes**

35 U.S.C. § 252 ................................................................................................................................ 7

35 U.S.C. § 307 ................................................................................................................................ 7

I.     **The Material Facts Are Not in Dispute**

Infinity does not dispute that it amended all asserted claims in response to prior art rejections and argued that the amendments distinguished the claims from the prior art. (D.I. 113 at 1-6). Nor does it dispute that the limitations added by amendment do not appear in the written description, save a single reference to "generic" in figure 2g depicting a single embodiment. (*Id.* at 2, 10 n.8). The only question to be resolved is whether the amendments were substantive. The undisputed evidence of record conclusively shows that they were.

II.    **The Claims Were Substantively Amended**

Infinity makes no attempt to distinguish controlling Federal Circuit cases holding that amendments like Infinity's are substantive. (*See* Op. Br. (D.I. 113) at 7-8); *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347-49 (Fed. Cir. 1998); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1379-80 (Fed. Cir. 2017); *R+L Carriers, Inc. v. Qualcomm, Inc.*, 801 F.3d 1346, 1350-51 (Fed. Cir. 2015). Even *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, which Infinity cites to show that amendments during reexam are not *per se* substantive, holds that an amendment to avoid prior art was substantive. 129 F.3d 1247, 1251 (Fed. Cir. 1997).[1]

The Federal Circuit explains that "it is difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment . . . ." *Laitram*, 163 F.3d at 1348. But Infinity—perhaps realizing that it has nothing to gain by focusing on the amendments—does everything possible to avoid discussing them. In doing so, it leaves unanswered the most important question: "**Why, if the claims are of identical scope, did [Infinity] amend them?**" *Yoon Ja Kim v. Earthgrains Co.*, 451 F. App'x

---

[1]  Similarly, *Eberle v. Harris* found that all claims at issue were substantively amended, and rejected arguments that the amendments had "merely clarifi[ed]" the original claims. C.A. No. 03-5809 (FLW), 2010 U.S. Dist. LEXIS 142485, at *23-48 (D.N.J. June 30, 2010).

1

922, 925 (Fed. Cir. 2011) (affirming finding of intervening rights after amendment in response to prior art rejection). As discussed in ODA's opening brief, the intrinsic evidence shows that Infinity amended the claims to distinguish the cited prior art. (D.I. 113 at 2-6, 8-12).

Infinity asserts that the amendments simply clarify the original claims. This assertion is demonstrably false. During reexamination of the '811 patent, for example, the Examiner rejected the claims as anticipated and obvious. (D.I. 113, Exh. E at 19-22). Infinity amended to add the "unmodified standard protocol" language, and asserted:

> Kang teaches a non-standard communications protocol and associated control codes that would not be capable of transmission or reception by "unmodified standard protocol send/receive driver communications software," *as now recited in all of the claims of the instant patent*. . . .
>
> Thus, the patent owner respectfully submits that independent claims 1 and 20 *as modified*, *are now patentable over Kang for at least the reasons noted above.*

(*Id.* at 29-34, 36-37 (emphasis added); *see also id.* at 37-39 (using the same "*as now recited*" language in responding to the obviousness rejections)).

The Examiner then rejected a subset of the claims because the new "unmodified standard protocol" language was not supported by the specification. (*Id*. at 50-51). The Examiner, however, stated that "generic" would be supported by the specification and would still distinguish the claims over the cited prior art references. (*Id*. at 51). Infinity thereafter amended the claim in accordance with the Examiner's suggestion. (*Id*. at 62).

It is beyond dispute that the Examiner found that adding "unmodified standard protocol" (claims 7-17) and "generic" (claims 1-6, 18-20) distinguished the prior art. *See Sw. Bell Tel. Co. v. Arthur A. Collins, Inc*., 279 F. App'x 989, 996 (Fed. Cir. 2008) ("An amendment is directly, and not tangentially, related to patentability when an applicant's narrowing additions to a claim along with an applicant's own statements in the prosecution history indicate that the amendment

2

was made to distinguish over a reference."). Infinity made similarly substantive amendments to the other patents. (D.I. 113 at 4-6, 8-11). Thus, ODA's motion should be granted.

### III. Infinity's Remaining Arguments Are Moot, But Nonetheless Fail on the Merits

#### A. Claim Construction Shows that the Claims Were Substantively Amended

Infinity argues that ODA "did not apply *Phillips* or propose claim constructions." This is wrong—the bulk of ODA's brief analyzes the intrinsic record under *Phillips* to determine the scope of the claims. (D.I. 113 at 1-6, 8-12). Contrary to Infinity's assertions, the "generic" and "unmodified standard protocol" limitations were not in the original claims; they were added to distinguish prior art and thus narrowed the claims under *Phillips* and ODA's other cases.

***The Specification***. Most of Infinity's citations to the specification ***do not discuss software at all***, let alone "generic" software or "unmodified" protocols for "shifting [a] computer to a connected mode." (*See, e.g.*, D.I. 113, Exh. A ('811 patent) at 1:39-40 (referring to "a circuit"); *id.* at 4:59-60 ("any type of computer")). The single passage that discusses software states that "[a]ny available software package is acceptable"—encompassing **both** generic and non-generic software. (*Id.* at 8:24-26). Infinity's argument that Figure 2g shows that the software "must be 'generic'" is wrong because "generic" was added to distinguish the cited prior art and because a claim is not limited to a single embodiment.

Likewise, the specification's discussion of "circuitry" refers only to "simplified" circuitry (*see, e.g.*, *id.* at 8:50-59) and ***does not*** state that the PC requires "generic" or "unmodified" software to communicate.[2] It defies credibility to argue that a court, reading those sections, would construe the original claims as "identical" in scope to the amended claims.

---

[2] The sole citation regarding a "standard protocol" says nothing about limiting how the computer is "shift[ed]" to "a connected mode." (*Id.* at 5:49-52, claim 7). The remaining citations say that the facsimile machine "operat[es] in its normal fashion," and "may be either a group I, group II, or group III machine," but those are descriptions of the *facsimile machine*, as opposed

3

***The Prosecution History***.  Infinity's arguments concerning *Perkins* are a red herring. Infinity cites to a part of the prosecution history in which the patentee distinguished *Perkins* based on *Perkins'* use of separate *device 3* and its control software to process data going through the connection, not based on the *computer* or any software on the computer (generic or otherwise), or any description of how the computer is "shift[ed] . . . to a connected mode."  (D.I. 120, Exh. 2 at 7-9; *id.*, Exh. 1 at 8-9; *see also* Exh. I (Perkins), at 3:59-4:23).  As discussed above, during reexamination the Examiner rejected the claims over *Kang*, but determined that adding "generic" distinguished the claims from the cited art.  (D.I. 113, Exh. E at 19-22, 51).

Finally, Infinity cites the Examiner's statement regarding "generic" in figure 2g of the specification.  However, the file history is clear that the claims

> ***would be allowable if amended to indicate that the send/receive driver communications software is "generic"*** rather than "unmodified standard protocol" or if otherwise amended to overcome the § 112, 1st paragraph, rejections and ***to patentably distinguish the claims from Kang and Kochis.***

(*Id.* at 51 (emphasis added)).[3]

### B.    Infinity's Attacks on ODA's Analysis Universally Fail

First, Infinity wrongly states that ODA argues that amending during reexam "automatically" changed the claim scope.  (D.I. 120 at 11).  Rather, the addition of words to the claims was accompanied by a change in claim *scope*, as shown by the intrinsic record, including statements regarding the scope of the amended claims vis-à-vis the prior art.  (D.I. 113 at 8-12).

---

to the *computer* (where the software is housed), and thus cannot limit the claims to any particular method of "shifting the personal computer to a connected mode."  (*Id.* at 5:17-20, 8:50-63).

[3]    Infinity also points to the previous "in a conventional way, and without manipulation[] or modification" claim language, but does not argue that "generic" means that the data is transferred "conventional[ly]" or "without manipulation or modification."  Moreover, this was later replaced with various other language, including that "signals [are] received directly at the computer interface without prior circuit interception."  (Exh. J, Sept. 29, 2000 Amendment, at 4).

4

Second, Infinity suggests that the Court must *define* the claim terms. That is incorrect—the Court's task here is instead to determine the claims' relative scope.[4] (D.I. 113 at 14-17). *See Presidio*, 875 F.3d at 1378-79 ("[T]he relevant inquiry is whether the scope of the amended claims is actually identical to the scope of the original claims based on normal claim construction analysis . . . ."). That is, the question is whether the claim was substantively changed by adding "generic." The record shows that it was, since the Examiner concluded the claim as amended was distinguished from the cited prior art. (*See, e.g.*, D.I. 113, Exh. E at 51, 91).

Infinity's reliance on *Convolve* is misplaced. *Convolve* held that the intrinsic record, including the specification (which had as its "focus" the added limitation) and original prosecution (which showed a "clear intent" to limit the claim), demonstrated that the limitations added by amendment were implicit in the original claims. 812 F.3d 1313, 1323-24 (Fed. Cir. 2016). Here, there is unequivocal intrinsic evidence that the additional terms were necessary to distinguish the claims from the cited prior art, and were thus lacking in the original claims.

Infinity's other cites fail too. In *Minco Inc. v. Combustion Eng'g, Inc.*, the patentee simply replaced one claim term ("furnace") with another ("housing") where the specification showed "that the patent often used the term 'furnace' in the narrow sense of the barrel-shaped housing." 95 F.3d 1109, 1115 (Fed. Cir. 1996). Infinity points to no similar equivalency here. And *MobileMedia Ideas, LLC v. Apple Inc.* involved an amendment correcting an antecedent basis issue. 209 F. Supp. 3d 756, 762 (D. Del. 2016). Infinity identifies no such issue here.

Third, Infinity argues that ODA did not consider support from the specification or from the original prosecution, but none of Infinity's citations are relevant to the meaning of the added claim terms (as explained *supra*) and, even if they were relevant, they are far outweighed by the

---

[4] Infinity's argument is belied by its own claim construction positions, which are clearly designed to illuminate the *scope* of the claims, as opposed to their meaning. (D.I. 120 at 14, 16).

5

most instructive and persuasive intrinsic evidence: the reexam file histories. Infinity attempts to hide behind "disclaimer," but Infinity's own cases show that even under that standard, there was a change in claim scope. *See*, *e.g.*, *Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1285 (Fed. Cir. 2010) ("[A]n amendment that clearly narrows the scope of a claim, such as by the addition of a new claim limitation, constitutes a disclaimer of any claim interpretation that would effectively eliminate the limitation or that would otherwise recapture the claim's original scope."); *see also Presidio*, 875 F.3d at 1379-80 ("Whether viewed as a disclaimer or as evidence relevant to the proper claim construction, it is clear that the amended claims exclude [the relevant features of the prior art]."); (D.I. 113 at 14).[5]

Fourth, Infinity offers conclusory expert declarations and attacks ODA for failing to do the same. But expert testimony about the meaning of claim terms (as opposed to the meaning of terms of art outside the context of a patent) is improper. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015) ("[e]xperts may be examined to explain terms of art, . . . but they cannot be used to prove 'the proper or legal construction of any instrument of writing.'") (quotation marks and citation omitted). Both the Levitt and Zatkovich declarations improperly focus on how to interpret the intrinsic record, which is solely the province of the Court.[6] *Id.* (noting that the Court must decide the meaning of a given claim term "*in the context of the specific patent claim under review*"); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed.

---

[5] As in *Purdue Pharma L.P. v. Endo Pharm., Inc.* also cited by Infinity, it would be error for the Court to interpret the original claims to include the "generic" and "unmodified standard protocol" limitations where those limitations find no purchase in the original claims themselves. 438 F.3d 1123, 1136-37 (Fed. Cir. 2006). As in *Purdue*, the Court should reject Infinity's argument that the "invention itself" was directed to "generic" or "standard" software. (*Id.*).

[6] Levitt asserts that the patents' "objective" is to "utilize generic standard protocols and . . . software." (D.I. 120, Exh. J, at ¶ 26). But his cites involve *circuitry* and efforts to distinguish devices that use a "microprocessor"—not to a discussion of software or drivers. (*Id.*). And the priority application for all four patents does not discuss drivers, nor does it include figure 2g (and thus cannnot support the claim scope Infinity agues for). (*See* Exh. K (Appl. No. 08/226,278)).

Cir. 2005) ("conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court."). These irrelevant arguments have no bearing on the Examiner's reasons for requiring the amendment. Infinity cites *Monosol* for the proposition that the Court should look to extrinsic evidence, but *Monosol* held that three amendments during reexam were all substantive, **relying solely on the intrinsic record**. *MonoSol RX, LLC v. Biodelivery Scis. Int'l, Inc.*, C.A. No. 10-5695 (FLW/DEA), 2015 U.S. Dist. LEXIS 128870 (D.N.J. Sep. 25, 2015). The intrinsic record here—including the language of the claims, the specification, and the reexam file histories—shows that the claims were substantively amended. (D.I. 113 at 8-12).

### C. Absolute Intervening Rights Apply to Method Claims[7]

As Judge Bryson recognized in *Sonos, Inc. v. D&M Holdings Inc.*, "[t]he statutory protection offered by absolute intervening rights does not depend on whether the claims at issue are apparatus or method claims." 287 F. Supp. 3d 533, 539 (D. Del. 2017).[8] Infinity's *In re Kollar* case has nothing to do with intervening rights, and instead concerns the on-sale bar. 286 F.3d 1326, 1333 (Fed. Cir. 2002). Similarly, the district court in *Univ. of Va. Patent Found. v. GE* expressly did *not* decide "whether any patented process might merit the protection of absolute intervening rights" but merely suggested that it might if a "specific thing" were in existence at the time. 792 F. Supp. 2d 904, 916 (W.D. Va. 2011). The other cases cited by Infinity are not controlling and do not address the issue as directly as *Sonos*.

### IV. Conclusion

For the reasons above and in its opening, ODA requests that the Court grant its motion.

---

[7] It is important to note that the issue of whether absolute intervening rights apply to method claims has no impact on the fact that Infinity cannot recover damages for any activity before issuance of the reexam certificate. 35 U.S.C. § 252 ¶ 1, § 307(b); *Presidio*, 875 F.3d at 1377-78.

[8] ODA does not dispute that absolute intervening rights applies to specific things, not specific model numbers, as noted in its opening brief, where it referred to "'specific thing[s]' (*i.e.*, products)." (D.I. 113 at 8). The Court may thus disregard Infinity's argument. (D.I. 120 at 20).

|  |  |
|---|---|
| | Respectfully submitted, |
| | */s/ Jeff Castellano* |
| | John W. Shaw (No. 3362) |
| | Jeff Castellano (No. 4837) |
| | Andrew E. Russell (No. 5382) |
| | SHAW KELLER LLP |
| | I.M. Pei Building |
| | 1105 North Market Street, 12th Floor |
| | Wilmington, DE 19801 |
| OF COUNSEL: | (302) 298-0700 |
| Marc R. Labgold, Ph.D. | jshaw@shawkeller.com |
| Patrick J. Hoeffner | jcastellano@shawkeller.com |
| NAGASHIMA HASHIMOTO & YASUKUNI | arussell@shawkeller.com |
| 12005 Sunrise Valley Drive, Suite 203 | *Attorneys for Oki Data Americas, Inc.* |
| Reston, VA 20191 | |
| (703) 901-8860 | |

Dated: August 24, 2018

8