# Exhibit J



September 26, 2000

Commissioner of Patents and trademarks
Washington, DC 20231

Subject: Petition to Accept Duplicate Paper, in Response to Office Action Summary
Mailed by the Patent Office on 01/19/00

Applicant, Bruce Nachman
Reference: Serial No. 08 / 669, 056
Examiner Cheukfan Lee, Group Art Unit 2722
Filed June 24, 1996
For: INTERFACE FOR UTILIZING A FACSIMILE COUPLED TO A PC AS A
SCANNER

Attention: Petition Office

In recent discussions with Examiner Cheukfan Lee, Group Art Unit 2722, I was advised
that the above referenced Application could not be located, and told to contact your
office, and to provide a "Declaratory Statement" which is attached herewith.

Sincerely yours,

Marvin J. Nachman
Co - Inventor / Executor
315 Saybrook Road
Villanova, PA 19085
Tel.: 610 525 1089, or 610 525 9953

"Declaratory Statement

I, Marvin Nachman herewith certify that said Application, bearing serial number 08 / 669 / 056 was deposited with the United States Postal Service with sufficient postage as first class mail in an envelope on April 17, 2000, addressed to: Commissioner of Patents and Trademarks, Washington, DC 20231, Attention: Examiner Cheukfan Lee, Group Art Unit 2722

A duplicate copy of said Application is attached herewith.

Your consideration in accepting said duplicate Application will be appreciated.

Sincerely yours,

Marvin J. Nachman
Co - Inventor / Executor
315 Saybrook Road
Villanova, PA 19085
Tel.: 610 525 1089, or 610 525 9953

9 / 2 6 / 2 0 0 0

PATENT
DOCKET: B INFINITY - 3.0
IN THE UNITED STATES PATENT AND TRADE MARK OFFICE

| | |
|---|---|
| In re the Application of | Group Art Unit: 2722 |
| **BRUCE NACHMAN** | |
| Serial No. 08/669, 056 | Examiner: Cheufkan Lee |
| Filed JUNE 24, 1996 | |

For: INTERFACE CIRCUIT FOR
UTILIZING A FACSIMILE COUPLED TO A
PC AS A SCANNER

Response to Office Action due 4/19/2000

I hereby certify that this correspondence is being deposited with the
United States Postal Service with sufficient postage as first class mail in
an envelope addressed to:

Commissioner of Patents and Trademarks, Washington, DC 20231 on:
April 17, 2000
Marvin J. Nachman
Signature _____

Hon. Commissioner of Patents and Trademarks
Washington, DC 20231

With respect to the Office Action dated January 19, 2000, kindly amend the above

identified application as follows:

Claims 30, 31, 35, 49, 50, and 55 have been deleted.

Method claims 4,5,6, and 7 which were previously part of the Application and having been

previously paid for prior to our election of method claims, have been included herewith.

Claim 4. A method of interfacing a computer with a facsimile machine,

enabling use of the facsimile machine as a scanner or printer for the computer,

comprising the steps of:

(a) operating a keypad of the facsimile machine to generate selected tones;

(b) operating a first switch assembly from a normal position electrically

isolating the computer from the facsimile machine and coupling the computer

and facsimile machine to at least one telephone line to a scan/print position

coupling said computer to said facsimile machine and isolating the facsimile

machine and computer from the telephone line responsive to the selected tones

generated;

1

(c) momentarily operating a second switch assembly from a normally occupied first position to a second position for activating a ring generating circuit to generate a sinusoidal signal of a given frequency and amplitude and applying said signal to said computer and facsimile machine to cause said facsimile machine to initiate a scan mode or a print mode;

(c) releasing said second switch means after an interval, between one and two seconds to return the second contact assembly to the first position to remove said sinusoidal signal from said computer and facsimile machine and activating a constant current generating circuit for generating a constant current and applying said constant current to said computer and facsimile machine to simulate an off-hook condition; and either

(e) transmitting signals from the facsimile machine to said computer representative of information on a document scanned by said facsimile machine responsive to the simulated off-hook condition and operation of the start button; or

(f) whereby the computer transmits signals to the facsimile machine when in a print mode, responsive to the simulated off-hook condition.

Claim 5. The method of claim 4 further comprising the step of:

storing signals received by said computer in memory means for subsequent use.

Claim 6. A method of interfacing a facsimile machine with a computer to cause said facsimile machine to operate as a scanning device, comprising the steps of:

(a) transmitting selected tones to the facsimile machine;

(b) coupling the facsimile machine to the computer and isolating the facsimile machine and the computer from a telephone line responsive to generation of

2

said selected signals;

(c)  generating a sine wave signal of a given frequency and amplitude representative of a standard facsimile machine call signal and applying said signal to said computer for a given time interval, between one and two seconds whereby the computer is conditioned to receive signals representing data on a scanned document;

(d)  generating a constant current signal after termination of said sinusoidal signal and applying said constant current signal to said facsimile machine to simulate an off-hook condition whereby the facsimile machine is conditioned to transmit signals representing data on a scanned document; and

(e)  operating a facsimile machine start button for initiating transmission of said facsimile machine for transmitting information to said computer representative of a document being scanned by said facsimile machine.

Claim 7. The method of claim 6 further comprising the step of:

storing signals received by said computer in memory means for subsequent use.


The following responses to Patent Examiner comments in the above referenced Office Action are provided:

<u>Response to paragraph 1</u>

Please see additional arguments provided herein, and detailed in response to paragraph 4.

<u>Response to paragraph 2</u>

Claim 40 has been changed to reflect " and the computer".

3

<u>Response to paragraph 3</u>

Claims 27 - 35, 40 and 43 - 48, and 51 - 54, have been amended to comply
with 35 U.S.C. 112, as noted herein. Claims 30, 31, 35, 49, 50 and 55 have
been deleted as noted above.

Claim 27. Amendment 3. - [ The use of facsimile machines and / or and

facsimile modems internal to an office product to create ], <u>A method of</u>

<u>creating</u> a scanning capability from a facsimile machine to a [ component]

<u>computer; with scanned image digital</u> data transferred [ in a conventional way],

<u>directly between the facsimile machine and the computer, comprising the steps</u>

<u>of:</u>

<u>isolating the facsimile machine and the computer from the public network</u>

<u>telephone line and;</u>

<u>coupling the facsimile machine to the computer;</u>

<u>conditioning the computer to receive digital facsimile signals representing data</u>

<u>on a scanned document;</u>

<u>conditioning the facsimile machine to transmit digital signals representing data</u>

<u>on a scanned document to the computer,</u> [ and ] <u>said computer being equipped</u>

<u>with send / receive driver communications software enabling the reception of</u>

<u>scanned image signals from the facsimile machine, said digital facsimile signals</u>

<u>being received directly at the computer interface without prior circuit</u>

<u>interception, thereafter, said computer processing the received digital facsimile</u>

<u>signals of the scanned document as needed.</u> [ manipulation or modification  of

the original signal, said <u>facsimile machine and computer</u> devices being directly

connected <u>to each other,</u> and isolated from a connection with a <u>public network</u>

telephone line. ]

Claim 28. Amendment 3. - [ The use of facsimile machines ], [ and / or] [ <u>and</u>

facsimile modems, ] <u>The method of performing a scanning function to a pre -</u>

4

existing facsimile modem, from a facsimile machine, said facsimile modem being internal or external to computers [ and various office products ], in order to enable a scanning function, [ and being connected by telephone types of circuits] said facsimile machine and fax modem are [ being ], connected, transferring signal data [ in a conventional way and], without [ interruption ] interception of said, [ or manipulation ] [ of the ], [original ] signals between the facsimile machine and the fax modem, said facsimile machine and fax modem being isolated from the public network telephone line, [connection for performing scanning being facilitated by the telephone circuits, isolated from the public network, ] and by which the establishment of the transmission state within these types of [circuits] connections include one of:

a) External initiation including [a via] ringing, constant current, on / off hook, or any typical telephone signaling;

b) Internal initiation, [such as] including setting a manual receive mode, setting a specialized mode, [for example] including, [ "PC mode" ] "computer mode " or by pressing a start button on the facsimile machine;

c) or [any] combination [thereof] of a and b.

29, ( Amendment 3 ) - The method of claim 27 to create a scanning function from a facsimile machine to a computer by [ direct ] transfer of non-intercepted [ non-interrupted ], [ non manipulated, and non modified ] signals from a facsimile machine, through a [ passive ] connection containing data, representative of scanned images, [ from a standard ] said facsimile machine, isolated from a public network telephone line, and connected to an appropriate receiving port of a computer, or other office product.

Claim 32. Amendment 2. - The [ method ] method [ use ] of claim 27,

including transferring a parallel data source signal of a scanned image from

[ a ] [ fax machine ] said facsimile machine to [ a ] said computer.

Claim 33. Amendment 2. - The [ method ] method [ use ] of claim 27,

including transferring a serial data source signal of a scanned image from [ a ]

said facsimile machine to[ a] said computer.

5

Claim 34. Amendment 2. - The [ method ] method [ use ] of claim 27,

including replacing the digital signal with [ transferring ] an analog scanned

image source signal from the [ a ] facsimile machine to [ a ] said computer

through a modem interface.

Claim 35.  Amendment 2  - The method of creating a printing function from a

facsimile machine to a computer by [ direct ] [ transfer of ] sending

non- intercepted [ interrupted ], [ non manipulated, and non modified, ] data

signals, [ containing data ], representative of a document to be printed from a

computer, and connected to an appropriate receiving port of a [ standard ]

facsimile machine, said facsimile machine and computer being [ and ] isolated

from [ a ] one or more public network telephone [ line ] lines.

Claim 36.  Amendment 3  - A method of making a facsimile machine operable

as a scanner or printer for a personal computer, each of the facsimile machine

and personal computer for communicating normally using [a] at least one

public network telephone line, comprising the steps of:

configuring the facsimile machine to communicate with the personal computer

using a digital connector port of the facsimile machine, and personal computer,

with both the facsimile machine and personal computer [and] isolated from

[the] said at least one public network telephone line:

arranging the facsimile machine to be in a [simulated off hook condition] digital

connection mode,: and

shifting the personal computer to [an off hook condition]

a connection mode, for sending or receiving non intercepted digital signals for

6

scanning or printing between the computer and the facsimile machine, in a facsimile machine format, using [an RJ-11 ] a digital connector port of the personal computer, said computer being equipped with send / receive driver communications software enabling the transfer of said scanning or printing signals between the computer and the facsimile machine.

Claims 37, 38, 39, and 42 needed no modification, and are dependent claims, therefore it was not felt necessary to resubmit them.

Claim 40. Amendment 2. -The method of claim 36, using [ any combination of] [RJ 11], RS 232, [ or ] parallel or other suitable digital [ or analog ] port type connectors to interface between [ a] said facsimile machine [and a] [or said] and [ the ] said computer.

Claim 41. Amendment 2 - The [ method ] method [ use ] of claim 27 further comprising optically recognizing the scanned data and converting the scanned data into character codes.

Claim 43 Amendment 2 - A method of using a facsimile machine as a scanner or printer for a personal computer, each of the facsimile machine and personal computer for communicating using telephone types of circuits, said facsimile machine and computer being isolated from the public telephone network, comprising the steps of:

(a) Configuring the facsimile machine to communicate with the personal computer using the facsimile machine, and [isolated from] isolating the facsimile machine and computer from the [ active ] public telephone network,

(b) arranging the facsimile machine to be in a simulated off-hook condition, or connection mode; and

(c) shifting the personal computer to an off-hook condition, or connection mode for sending or receiving non - intercepted [ interrupted ] signals

7

in ⬤simile formats between the personal co⬤uter and the facsimile machine.

Claim 44 - The method of claim 43 including using serial data transmissions between the facsimile machine and the personal computer.

Claim 45 - The method of claim 43 including using parallel data transmissions between the facsimile machine and the personal computer.

Claim 46 - The method of claim 43 including using analog data transmissions between the facsimile machine and the personal computer.

Claim 47 - The method of claim 43 [including]  using analog data transmissions, or digital serial, or parallel [signal]  signals [subsets thereof], between the facsimile machine and the personal computer.

Claim 48 - The method of claim 43 further comprising optically recognizing the scanned data and converting the scanned data into character codes.

Claim 51 - A method of using a facsimile machine as a scanner or printer for a personal computer, each of the facsimile machine and personal computer for communicating using telephone types of circuits, said facsimile machine and computer being isolated from the public telephone line, comprising the steps of:

(a) Configuring the facsimile machine to communicate with the personal computer using the facsimile machine, both the facsimile machine and the computer being [and]  isolated from the [active] public telephone [network] line

(b) arranging the facsimile machine to be in a  simulated off-hook condition, or connection mode; and

(c) shifting the personal computer to an off-hook condition, or connection

8

mode for sending or receiving non - intercepted data signals between

the facsimile machine and computer   [ without interruption or

manipulation ] in  facsimile formats for scanning or printing.

Claim 52 -  A method of using a facsimile machine with a computer, one or

both of which being connected to a telephone line, such that said facsimile

machine, [can operate] operates as a scanning device, when isolated from the

telephone [network]  line, comprising the steps of:

    (a) coupling the facsimile machine to the computer;

    (b) generating a facsimile machine signal, whereby the computer is

conditioned to receive signals representing data on a scanned

document.

    (c) generating a signal to simulate an off - hook condition, or

connection mode, providing a direct path, whereby the facsimile

machine is conditioned to transmit, [ and/or non modified] signals

without  interception [ interruption] to the computer, representing data

on a scanned document.

Claim 53.  A method of using a facsimile machine with a computer, one or

both of which being connected to a telephone line, such that said facsimile

machine, [can operate] operates as a printing device, when isolated from the

telephone

[network]  line, comprising the steps of:
(a) coupling the facsimile machine to the computer;

(b) generating a signal representative of a standard facsimile machine call

    signal, whereby the computer is conditioned to [Transmit] transmit  signals

9

representing data on a document to be printed.

(c) generating a signal to simulate an off - hook condition or connection mode, providing a direct path, whereby the facsimile machine is conditioned to receive <u>non intercepted</u> [non interrupted, non manipulated and / or non modified ] signals representing data from the computer of a document to be printed.

Claim 54. - Amendment 2. A method of making a facsimile machine operable as a scanner or printer for a computer, each of the facsimile machine, and computer for communicating, <u>normally</u> using at least one public network telephone line, comprising the steps of:

configuring the facsimile machine to communicate with the personal computer using a digital connector port on the facsimile machine, and a digital connector port on the computer, with both the facsimile machine and computer isolated from said at least one <u>public network</u> telephone line: and

arranging the facsimile machine to send or receive digital [ serial] data, and [ means for] coupling the digital signals to the personal computer, and the facsimile machine, said computer equipped with send / receive driver communications software enabling the reception of scanned image signals from the facsimile machine, or the sending of computer data to the facsimile machine for printing.

<u>Response to paragraph 4</u>

Regarding claim 27, see the amended claim 27, and the following discussion. The following denotes some significant differences between Perkins' Patent and the Applicant's Patent Application. Also described is a major limitation to

10

Perkins design, ie. Perkins' design is limited to transfer of only analog

signals ( not digital signals) from his device 3 to the facsimile transceiver and

his design can receive only analog signals ( not digital signals ) from the

facsimile transceiver to his device 3. In contrast, the Applicant can transfer

digital signals between the facsimile transceiver and the computer in

accordance with the Applicants' Specification and numerous

claims ( claims 27, 32, 33, 35, 36, 40, 43, 44, 45, 47, 51, 52, 53, and 54 ), and

as delineated in Figures 2F, 2G, and 2H.

Perkins col. 9, lines 29-33, requires the use of a modem, ring generator means,

line loop detector, control means comprising microprocessor 10, all of which

are within the configuration of device 3. Perkins' device 3 is placed on a card

internal to the computer in order to enable the transfer of analog signals

between the facsimile transceiver and the computer.

By incorporating his device 3, Perkins has modified the computer with his

invention. To enable the transfer of a signal from the computer to the facsimile

transceiver, Perkins' device 3 must convert a digital signal into an analog

signal, which passes through a PSTN ( Public Switch Telephone Network )

type connector, in order to be received by the facsimile transceiver. See

Perkins, col. 3, line 59 through col. 4, line 2, and Perkins Fig 1.

It is evident that Perkins does not envision a direct transfer of digital signals

between the facsimile transceiver and the computer. At no time does Perkins

state that the facsimile transceiver is modified to receive or transmit digital

signals, or that the facsimile transceiver is configured with a connector suitable

for the receipt or transfer of digital signals. Nor is Perkins' device 3 designed

11

to transmit digital signals directly to the facsimile transceiver. Therefore,
Perkins is limited to transferring only analog signals between the external
connection of his card located in the computer, and the facsimile transceiver.
There is no reference by Perkins indicating the transfer of a non interrupted
digital signal from the facsimile transceiver to the computer. In fact Perkins
specifically states that the facsimile transceiver is equipped with a PSTN
connector which necessarily means that the connector receives or transfers an
analog signal.

Perkins' description for transferring scanning or print signals are described by
Perkins in col. 4, line 3 to col. 5, line 12. Specifically print signals are
described in col. 4, line 41 to line 47. Perkins states "The line interface unit 7
then sends the modulated data to the facsimile transceiver 1 via the connector
4". As noted earlier, connector 4 is a PSTN type connector which accepts
standard analog transmission signals not digital signals.

In effect Perkins' device 3 converts digital signals to analog, which are the only
signals that can be received by the facsimile transceiver for printing when using
Perkins' Patent.

Scanning is described in col. 5, line 1 through line 12 of Perkins' Patent.
According to Perkins, "Once communication is established, the facsimile
transceiver 1 sends modulated signals representing the scanned documents via
the connector 4 to the line interface unit 7 and to the modem 9 where the
modulated signals are demodulated".

In Perkins' scanning application the signal which is transferred between
connector 4 and line interface unit 7 when Perkins card is installed in the

12

computer is a standard analog facsimile transmission. After the analog facsimile transmission data enters the card installed in the computer through line interface unit 7, the modulated signals are demodulated by modem 9, and then transferred by Perkins' microprocessor 10 ( located on his card ), as digital information. Perkins col. 9, lines 31 to 33 states "The card would have a connector for the facsimile transceiver to connect the computer directly to the facsimile transceiver". The card connector must therefore be one of a PSTN type, in order to transfer analog signals between the facsimile transceiver and the computer, because the facsimile transceiver has not been modified by Perkins to send or receive digital signals.

In contrast, what the Applicant does to enable the transfer of non - interrupted digital signals between the facsimile transceiver and the computer is very different from Perkins. The Applicant uses standard communications software available for most computers in order to send or receive non - interrupted digital data between the facsimile transceiver and the computer.

The Applicant integrates his circuit 10 with the existing control/modem circuitry of the facsimile transceiver in order to establish a digital connection and to transfer non - intercepted digital signals through RS 232, or parallel connector type ports between the facsimile transceiver and the computer. (See the Applicants' Patent Application page 16, lines 22 through page 17, line 14, and Fig. 2G.) The Applicant does not require any intervening circuitry to demodulate or modulate the transmitted signals as does Perkins. In addition, when digital data is transferred for scanning or printing, the Applicant does not require the use of a computer modem, as does Perkins with his device 3.

13

In claims where the Applicant transfers an analog signal, it is always to an existing computer modem either external or internal to the computer, said computer modem is not required to be provided by the Applicant, whereas Perkins because of his design must provide a modem as part of his card or device 3.

Regarding the Examiner's comment for claim 27, with reference to Perkins, as noted in the last sentence of the Examiner's comments, "The direct connection of the facsimile transceiver ( 1 ) and the computer ( 2 ) is isolated from the telephone line."

It is agreed that both Perkins and the Applicant isolate from the telephone line. However, this action appears as a single step in an otherwise completely different way of enabling the transfer of digital and analog signals between a facsimile transceiver and a computer for scanning or printing, and is therefore non - infringing, as described herein.

In addition to the above information, please consider the following:

When Perkins' device 3 receives the facsimile transmission signals for scanning in the external mode, the modulated signal is demodulated by device 3 and subsequently transmitted as a digital signal to the RS 232 port of the computer where it is transmitted through the I/O Bus and is processed by the receiving circuits, (i. e. UART, CPU ) of the computer.

When Perkins places his device 3 on a card internal to the computer, the same process noted above occurs. In this internal configuration, facsimile transmission data never enters the computer I/O Bus until after it is processed by the device 3 card circuits into digital data, thereafter, the flow of data

14

transfers to the I/O Bus and is processed by the computer circuitry.

It is therefore evident that Perkins' device 3 intercepts the flow of data before it is transmitted to the computer circuits, in order to achieve the proper digital signal format acceptable to the computer. Hence, even though circuitry of device 3 is placed in a card within the box containing the computer it should be regarded as a peripheral device to the computer which processes data before it is transmitted to the I/O bus of the computer.

Contrary to the above, when the Applicant transfers digital data from the facsimile transceiver for scanning to the computer, the data enters through the RS 232 type connector port of the computer and passes directly to the I/O Bus and is processed by the receiving circuits (i. e. UART, CPU ) of the computer, providing a true non intercepted signal between the facsimile transceiver and the computer.

In effect, the Applicant's method does not use intermediary circuitry for signal demodulation or modulation such as is required by Perkins with his card or device 3.

Consequently, the Applicant's invention is different from the prior art as required by 35 USC 102e. Not only is the Applicant's invention different, but his invention is not obvious, in keeping with the requirement of 35 USC 103. This difference is meaningful, not found in the prior art and provides real benefit. For example, the Applicant's invention can be built for at least half the cost of the prior art, since he does not require any of the additional hardware and software ( loop detector circuit 8, modem 9, microprocessor 10,  control program, device 3 controls, display 12, and keypad 13 ), that is required to be

15

provided by the prior art of Perkins. The prior art never suggests or teaches the

inventive methods of the Applicant as stated herein, for transferring digital and

analog signals in order to create a scanning or a printing function between a

computer and a facsimile transceiver.

Regarding claim 28, this claim has been modified to comply with the

Examiners comment, and in accordance with the discussion herein, for

paragraph 4, claim 27, above. Please note that the "computer mode", is

inherently a function of all computers, and is used by the Applicant in an

otherwise completely different and simplified inventive method than Perkins for

enabling the transfer of digital and analog signals between a facsimile

transceiver and a computer for scanning or printing, and is therefore believed

to be non - infringing, as described herein.

Regarding claim 29, this claim has been modified to comply with the
Examiners comment, and in accordance with the previously referenced
discussion for claim 27, herein.
Regarding claim 30, this claim has been deleted.
Regarding claim 31, this claim has been deleted.
Regarding claim 35, this claim has been deleted.
Regarding claim 36, See the amended claim 36, and discussion for paragraph

4, claim 27, and as follows. Perkins and the Applicant use the public telephone

line for communication. However, this action appears as a single step in an

otherwise completely different way of enabling the transfer of digital and

analog signals between a facsimile transceiver and a computer for scanning or

printing, and is therefore believed to be non - infringing, as described herein.

Please note the amended claim 36, now specifies a digital connection mode,

and allows for the digital signals to be transferred without interception between

the facsimile machine and the computer, which the prior art cannot do, as

16

stated in the referenced discussion herein.

Regarding claims 37, 38, and 40, see response to paragraph 4, discussion for claim 27. The Perkins card, as noted above can only be equipped with a PSTN type connector, which is capable of transferring analog signals to the facsimile machine, which must be equipped with a PSTN type connector for receiving or sending said analog signals. There would be no purpose in equipping Perkins' card which is installed in the computer, with an RS 232 connector, since the circuit described by Perkins can only transmit an analog signal to the facsimile transceiver through a PSTN type connector and the facsimile transceiver has not been enabled to receive a digital signal. Based on this analogy, the Examiner's comment that " the connector ( col. 9, line 31 ) is inherently a RS 232 or RJ 11 port", is not justified with respect to the RS 232 connector.

Regarding claims 41 and 42, It is not necessary to convert a scanned document with optical character recognition software in the computer, unless the user has a need to edit said document. A scanned document may remain resident in a computer as an image of text, photograph or line art, etc., for storage or for future facsimile transmission or E-mail, without the need to optically recognize it. Therefore, it is not inherent, as suggested by the Examiner, that said scanned data would require optical recognition.

Regarding claims 43 and 51 - 53, see the discussion herein, paragraph 4, with respect to Perkins, and the inventive differences stated by the Applicant.

Regarding claim 44, see the following, and discussion above for differences in the way the Applicant and Perkins use  a serial data port. Most computers are equipped with serial data ports for peripheral device usage such as a printer.

17

However, the Applicant employs the use of the serial data port when serial data is transferred through the facsimile machine's serial data port and linked directly to the computer's serial data port. Perkins uses the serial data port to connect from his device 3 to the computer. In addition, Perkins never suggests that the facsimile machine is equipped with a serial data port.

Regarding claim 47, see the discussion herein, and as noted above: The digital serial data being transferred is not intercepted by the Applicant as it is with Perkins' card, or device 3.

Regarding claim 48, see the response to claim 41 and 42 above, with respect to the use of optical character recognition software.

Regarding claims 49 and 50, see the discussion and additional information provided herein.

Regarding claims 54 and 55, claim 55 has been deleted. See the discussion and additional information provided herein for claim 27, which is applicable to claim 54.

In view of the foregoing discussion, it is apparent that the Applicant has invented a simpler way than Perkins, to accomplish a scanning and printing function, between a facsimile machine and a computer.

It is submitted that claims 27, 28, 29, 32 - 34, 36 - 48, and 51 - 54 patently distinguish over the art of record, and reconsideration and allowance of these claims, be allowed.

Reconsideration and early allowance of this application are respectfully requested, in view of the foregoing.

If, however, the Examiner is of the opinion that such favorable action cannot

18

now be taken, it is requested that she telephone the undersigned Applicant in order that any outstanding issue may be resolved without the necessity of a further office action.

Respectfully submitted,

Marvin J. Nachman,
Executor / CO - Inventor
315 - Saybrook Road
Villanova, PA 19085
Tel: 610 - 525 - 1089 Voice and Fax

19