IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INFINITY COMPUTER PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-463-LPS-CJB |
| | ) | |
| OKI DATA AMERICAS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT OKI DATA AMERICAS, INC'S**
**COMMENTS ON INFINITY'S CLAIM CONSTRUCTION TUTORIAL**

OF COUNSEL:
Marc R. Labgold, Ph.D.
Patrick J. Hoeffner
NAGASHIMA HASHIMOTO & YASUKUNI
12005 Sunrise Valley Drive, Suite 203
Reston, VA 20191
(703) 901-8860

John W. Shaw (No. 3362)
Jeff Castellano (No. 4837)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
jcastellano@shawkeller.com
arussell@shawkeller.com
*Attorneys for Oki Data Americas, Inc.*

Dated: January 22, 2019

Infinity Computer Products, Inc. ("Infinity") provides a "tutorial" that consists almost exclusively of unsupported attorney argument regarding its claim construction and infringement positions. Here are Oki Data Americas, Inc.'s ("ODA") comments on Infinity's slides:

Slide 3, "Multifunction Devices," incorrectly states that "[a] 'fax' is the core of a multifunction device." Modern multifunction devices are typically referred to as "MFPs," which stands for "multi-function printer." The "core" of the device is a printer, with the other features added on to that core.

Slide 4, "Prior To Infinity," inaccurately describes the prior art. The inventor did not claim to have invented the idea of "printing" and "scanning" by sending and receiving faxes to a facsimile machine on the same desk by simulating the functions of a phone network. Instead, he described and cited art that enabled that functionality, criticizing it because the electronics involved were too complex or expensive. (*See, e.g.*, '811 patent, 1:31-35; Exh. 1[1] at 1-2 (information disclosure statement); Exh. 42 (Lin)). He claimed to have invented a ***simpler circuit*** for simulating the functions of a phone network without expensive components. (*See, e.g.*, Ex. 49 at 22 (criticizing prior art method of simulating a phone network as too "complicated"); Ex. 48 at 2:1-7 (criticizing prior art techniques as requiring a microprocessor and being too "complicated" and "expensive"); *id.* at 2:9-4:4 (describing invention as a simple electrical circuit)). Thus, the benefits listed on this slide are irrelevant to the purported innovations of the patents-in-suit.

Slide 5 is incorrect, given the inventor's own acknowledgment that devices for simulating a phone network to send a fax to a facsimile machine on the same desk existed prior to his invention.

---

[1] The exhibits numbers cited herein refer to the exhibits attached to the Joint Claim Chart, D.I. 148, and Oki Data America, Inc.'s Opening Claim Construction Brief, D.I. 151.

Slide 6 describes the modern devices at issue as multi-function printers, but omits that modern multi-function printers do not communicate with computers by sending and receiving faxes.

Slide 7 correctly states that the '558 patent is directed to enabling a conventional facsimile machine to communicate with a personal computer. But the '558 patent did not describe any particular "send/receive driver communications software"; it simply disclosed printing and scanning by sending and receiving faxes. That language was added later, and is not relevant to the claim constructions at issue in the present briefing.

Slide 8 is irrelevant for the same reason as slide 4: Infinity did not invent the idea of printing and scanning by sending and receiving faxes. It therefore did not "Solve[] 'Plug-n-Play' for All-In-One." ODA sold "plug-n-play" printers as early as 1984. (Exh. A (PC Magazine February 21, 1984 advertisement)). Nor do the patents-in-suit describe a "[l]ayered software architecture" beyond mentioning the use of a commercially available "send and receive driver software package" to send or receive faxes to the fax machine using the inventor's circuitry, and optical character recognition ("OCR") software for processing documents. (*See, e.g.*, '811 patent, 5:25-31; 8:15-26).

Slide 9 is irrelevant given that Infinity did not invent "plug-n-play."

Slide 10 describes "the power of the Infinity teachings" including the "layered software architecture." As set forth above, the purported "layered software architecture" of the specification consists of a mention of using "[a]ny available send/receive communications software package" to send and receive faxes, and using commercially available "OCR software packages" to perform text recognition if desired. Both existed before the patent application. According to the slide, this "layered software architecture . . . [s]its on top of the generic send/receive driver communications

software" and "[a]dds functionality."  There is no discussion of such a "layered software architecture" in the patents-in-suit, beyond the brief statements that commercially available software was available.

Slides 11-14 relate to claim terms that are not at issue in the present claim construction briefing.

In sum, Plaintiff's claim construction hearing tutorial consists largely of unsupported attorney argument, exaggerations of the scope and influence of the invention, and inaccurate slides. As such, it should be disregarded by the Court.

          Respectfully submitted,

          SHAW KELLER LLP

          */s/ Andrew E. Russell*
          John W. Shaw (No. 3362)
          Jeff Castellano (No. 4837)
          Andrew E. Russell (No. 5382)
          I.M. Pei Building
          1105 North Market Street, 12th Floor
          Wilmington, DE 19801

OF COUNSEL:          (302) 298-0700
Marc R. Labgold, Ph.D.          jshaw@shawkeller.com
Patrick J. Hoeffner          jcastellano@shawkeller.com
NAGASHIMA HASHIMOTO & YASUKUNI          arussell@shawkeller.com
12005 Sunrise Valley Drive, Suite 203          *Attorneys for Oki Data Americas, Inc.*
Reston, VA 20191
(703) 901-8860

Dated: January 22, 2019