IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INFINITY COMPUTER PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 18-463-LPS |
| | ) | |
| OKI DATA AMERICAS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **OKI DATA'S RESPONSE TO INFINITY'S MOTION FOR RECONSIDERATION**

OF COUNSEL:
Marc R. Labgold, Ph.D.
Patrick J. Hoeffner
NAGASHIMA HASHIMOTO & YASUKUNI
12005 Sunrise Valley Drive, Suite 203
Reston, VA 20191
(703) 901-8860

John W. Shaw (No. 3362)
Jeff Castellano (No. 4837)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
jcastellano@shawkeller.com
arussell@shawkeller.com
*Attorneys for Oki Data Americas, Inc.*

Dated: July 22, 2019

## INTRODUCTION

In its procedurally improper request for reconsideration, Infinity presents no new or misapprehended facts or law.  Instead, it attempts to overcome the Court's indefiniteness holding by re-writing the prosecution history to avoid the consequences of what the applicant actually said to secure the patents' allowance.  Infinity also argues that the Court misapplied the law of disclaimer.  Infinity is wrong on all counts, and its motion—consisting almost exclusively of attorney argument and after-the-fact reinterpretation of the intrinsic record—should be denied.

## ARGUMENT

### I.     Infinity's Motion Is Procedurally Defective

Motions for reconsideration or reargument "shall be sparingly granted," L.R. 7.1.5, and only in "rare circumstances."  *Fairchild Semiconductor Corp. v. Power Integrations, Inc.*, C.A. No. 12-540-LPS, 2015 U.S. Dist. LEXIS 53835, at *3 (D. Del. Apr. 24, 2015).

Infinity does not point to any change in controlling law or any previously unavailable evidence.  Thus, the only possible basis for its motion must be the "need to correct a clear error of law or fact to prevent manifest injustice."  *Sunovion Pharm., Inc. v. Actavis, Inc.*, C.A. No. 12-993-LPS, 2014 U.S. Dist. LEXIS 75233, at *2-3 (D. Del. June 3, 2014) (denying motion for reconsideration of claim construction ruling).  Yet, Infinity does not take issue with the Court's interpretation of the well-settled law of indefiniteness.  Thus, Infinity must establish that the Court made a clear error of fact and that correction is necessary to prevent manifest injustice.  *Id.* Infinity has established neither (it does not even discuss manifest injustice).  Infinity's motion may be granted only if "the Court has patently misunderstood" Infinity's position or "made an error not of reasoning but of apprehension."  *Id.*  The Court need not entertain motions for reconsideration "grounded on a request that a court rethink a decision already made[,]" or

1

consisting of the "'repetition of arguments that were or should have been presented to the court previously.'"  *Id.* (quoting *Karr v. Castle*, 768 F. Supp. 1087, 1093 (D. Del. 1991)).

Infinity's motion is directed to arguments that were, or should have been, presented to the Court in prior briefing or at oral argument.  Infinity already argued that there was no conflict between the positions it took regarding the meaning of "passive link" with respect to *Perkins* and the '278 application.  (D.I. 159 at 4-9 ("Perkins Creates No Conflict")).  More specifically, a key point of Infinity's motion for reconsideration—that the patentee's arguments with respect to *Perkins* in September 2002 pertained to claim 27 only—was raised and argued at the hearing. (Tr. at 63-66, 76-77).[1]  Thus, Infinity's motion should be denied.  *See Flash Seats, LLC v. Paciolan, Inc.*, C.A. No. 07-575-LPS, 2011 U.S. Dist. LEXIS 110476, at *10 (D. Del. Sept. 28, 2011) ("The [reconsideration] burden is particular[ly] difficult to meet where, as here, all the evidence and argument [were] already before the Court . . . ."); *Sunovion*, 2014 U.S. Dist. LEXIS 75233, at *1-4 (denying motion for reconsideration where arguments were previously presented to the Court); *Siemens Indus. v. Westinghouse Air Brake Techs. Corp.*, C.A. No. 16-284-LPS, 2018 U.S. Dist. LEXIS 102990, at *4 (D. Del. June 20, 2018) (same).

Although it is apparently arguing misapprehension, Infinity does not appear to dispute that the Court gave this issue its due attention.  The Court spent several pages of its opinion considering and interpreting the patentee's September 2002 response regarding *Perkins* and its relationship to the patentee's arguments on reexam.  (D.I. 172 at 8-11).  Infinity simply disagrees

---

[1] To the extent Infinity's arguments were not raised previously, they should have been.  Infinity states that the basis for its reconsideration motion is that "Oki Data's claim construction briefing and figures misrepresented the prosecution history" (D.I. 181 at 1) but Infinity had the opportunity to challenge those arguments ***during the course of that briefing*** (and did so).  It is too late to raise new challenges now.  *Sunovion*, 2014 U.S. Dist. LEXIS 75233, at *2-3 (Court can disregard "'arguments that . . . should have been presented to the court previously'") (quoting *Karr v. Castle*, 768 F. Supp. 1087, 1093 (D.Del. 1991)).

with the Court's conclusion that the patentee's statements regarding "passive link" over time were inconsistent.  That, however, is not a proper basis for reconsideration:

> Here, the Court interpreted the prosecution history differently than Plaintiff interpreted it. But the Court plainly did examine the prosecution history and thoroughly explained its interpretation of it. . . . This is not misapprehension.

*Flash Seats*, 2011 U.S. Dist. LEXIS 110476, at *12-14.

While it is clear that Infinity disagrees with the Court's reasoning, it fails to identify any alleged misapprehension by the Court.  Instead, Infinity simply asks the Court to "'rethink a decision already made.'"  *Id.*, at *6 (citation omitted).  Infinity's motion should be denied.

## II.    Infinity Is Wrong On The Merits

### A.    The Court Correctly Interpreted the Patentee's Statements About *Perkins*

Infinity first asks the Court to ignore the patentee's statement distinguishing *Perkins* because it took the opposing view in "legion" submissions during reexamination.  (D.I. 178 at 2-3).  But Infinity cites nothing for the proposition that a person of ordinary skill in the art should ignore clear and unambiguous statements regarding claim scope when the patentee takes contradictory positions in other submissions.  The law is otherwise.  *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1345 (Fed. Cir. 2015) (holding claim term indefinite where patentee used two inconsistent definitions of term during prosecution).  Any lack of further statements about *Perkins'* "passive link" is not surprising—the patentee had no need to further discuss that issue after the rejection on those grounds was overcome by the patentee's arguments.  Infinity now asks the Court to ignore those same arguments.  Nonetheless, the inconsistent statements remain, leaving the public in an unresolvable state of confusion.

Infinity then attempts to recharacterize one of the patentee's statements made during prosecution, arguing that the computer begins and the "passive link . . . to the computer" ends "at

3

the RS 232 type connector port 'of the computer,'" despite the patentee's statement that the link

goes *through* that port and directly *to* the I/O bus.  (D.I. 178 at 3).  Infinity suggests that the

patentee's statement that the non-intercepted signal passes directly to the I/O bus was actually

concerned with a "permissive benefit," not the interpretation of a claim limitation. (*Id*. at 1, 3-4).

These revisionist arguments ignore the context of the patentee's statements about

*Perkins*, which makes clear that they were being used to distinguish *Perkins* as lacking a passive

link because it intercepted the data before it reached the I/O bus, despite being "installed in the

computer."  (D.I. 148, Ex. 25 at 10).  As the Court recognized, the patentee clearly and

unambiguously explained that *Perkins'* internal device 3 "intercepts the flow of data before it is

transmitted to the computer circuits," and thus even though it was "within the box containing the

computer," it interrupted the passive link because it "processes data before it is transmitted to the

I/O bus of the computer."  (*Id.* at 12; D.I. 172 at 8-11).  In other words, the patentee stated that

the data in *Perkins* "never enters the computer I/O Bus until after it is processed by the device 3

card circuits."  (*Id*.).  The patentee contrasted *Perkins* with his own embodiment, in which "the

non intercepted data enters through the RS 232 type connector port of the computer and passes

directly to the I/O Bus . . . . providing a true non intercepted digital signal between the facsimile

transceiver and the computer."  (*Id*.).  Infinity cannot credibly claim that these statements related

only to a "permissive benefit" of the claims, when that "benefit" was the central and operative

distinction the applicant made between its claimed invention and *Perkins* with respect to the

"passive link," (*i.e.*, interception between the fax machine and the computer's I/O bus).[2]

---

[2]   Moreover, Infinity is wrong that a "passive link" is limited to links involving RS 232 ports.  A
"passive link" can use, *e.g.*, an RJ11 cable as Infinity itself acknowledges.  (D.I. 178 at 5 (figures)).

Infinity simultaneously suggests that the statements made during prosecution regarding the internal fax modem of *Perkins* were somehow not inconsistent with its later statements made during the reexamination regarding the internal fax modems of the '278 application because the *Perkins* device 3 may be a card.  (D.I. 178 at 3-5).  This too is unsupportable.  The patentee repeatedly characterized *Perkins*' device 3 as "installed in the computer," "located in the computer" and "internal to the computer," but nonetheless stated that it "intercepts the flow of data before it is transmitted to the computer circuits" and "before it is transmitted to the I/O bus of the computer."  (D.I. 148, Ex. 25 at 7, 8, 9, 10, 12).  Thus, the evidence contradicts Infinity's current arguments.  As the Court said in its ruling, "Infinity's post hoc distinction of Perkins does not negate the patentee's far more specific arguments during prosecution."  (D.I. 172 at 11).[3]

Infinity includes a string cite to its previously submitted expert declaration followed by a parenthetical that is ***not supported by the cited paragraphs***.[4]  (D.I. 178 at 4).  Rather, the cited paragraphs (i) lack context and are irrelevant to the narrow issue here (D.I. 149, Ex. 6, ¶¶ 36-37, 80 (relating to software driver terms not at issue here)), (ii) are bare recitations of Infinity's non-indefiniteness position (¶ 59), or (iii) serve only to acknowledge that the patentee distinguished *Perkins* on the grounds that the internal embodiment did not have a passive link (¶ 70 ("processing by [internal] device 3 is clearly the reason Infinity argued that the Patent Examiner's position [that *Perkins* disclosed a passive link] was incorrect" (discussing the "internal configuration" referred to in ¶ 69))); *see also id.*, ¶¶ 68, 69; D.I. 162 at 17 n.8).

---

[3]   Infinity fails to cite anything suggesting that the patentee or the examiner viewed its post hoc assertions to be a relevant distinction or even that anyone had this view in mind when considering *Perkins*.

[4]   As explained previously, the declaration is not helpful to Infinity.  (D.I. 162 at 14-18).

Infinity next takes issue, for first time, with the figures Oki Data included in its briefs (and that were cited by the Court) because they do not reflect *Infinity's* views.  (D.I. 178 at 4-5). For the reasons discussed above, Infinity's untimely arguments are unsupported and its criticisms of Oki Data's figures are unfounded for the same reasons.[5]

Infinity also asserts that Oki Data made a "factual error[]" by "including a fax modem inside the computer in the embodiment [of the asserted patents] addressed by Infinity in the September 26, 2002 response" where none is required.  (D.I. 178 at 4-5).  This too is wrong, and Infinity misses the point of the figures.  As Oki Data stated, in order to distinguish *Perkins* "the applicant . . . specifically pointed to the new embodiments added in the CIP application and shown in figures 2f, 2g, and 2h of the '811 patent."  (D.I. 151 at 5).  These embodiments "work '*without* a fax modem' in the computer." *Id.* (quoting '811 patent, 8:22-24) (emphasis added). During re-examination, the patentee then reversed course and took the inconsistent position that his embodiments **with** an internal intervening apparatus (like *Perkins*) met the claim elements, doing so in order to claim priority to the '278 application and avoid other prior art.  (*Id.* at 7-9). It was that change in course that created the conflict shown in Oki Data's figures; the figures illustrate the conflict by correctly depicting the patentee's conflicting positions as applied to its own embodiments.  (*Id.* at 8; *cf.* D.I. 162 at 18 (comparing *Perkins* to the embodiment of Figure 2c)).  It is that irreconcilable conflict that renders the claims indefinite.  Nothing that Infinity now argues resolves it.

Infinity further criticizes Oki Data's figures for "omitting any ports or interfaces." (D.I. 178 at 5).  This, however, is a red herring.  Those ports and interfaces are described in the

---

[5]   Oki Data's briefs and the Court's ruling are based on the intrinsic record.  The figures created by Oki Data are merely a convenient illustration of the positions taken by the patentee during prosecution and reexamination.  Infinity's focus on the figures misses the point.

accompanying text, (D.I. 151 at 7-8), and do not alter the analysis.  Infinity offers its own figures emphasizing various purported "port[s,]" "interface[s,]," or "card slot[s]," (D.I. 178 at 5, 9), but as described below the patentee placed no significance on them.  Moreover, as the Court recognized (D.I. 172 at 11), Infinity cannot use them to create an unsupported post-hoc theory distinguishing *Perkins* that contradicts what the applicant actually said.

### B.      Infinity's Focus On Claim 27 Is Misplaced

Infinity argues that the portions of the patentee's September 2002 response that Oki Data and the Court relied upon related only to claim 27 of the pending application, not all claims. (D.I. 178 at 6-9).   Yet even if, *arguendo,* Infinity were correct (and, for the reasons discussed below, it is not), Infinity's statements about the meaning of "passive link" would still render the claims indefinite.  During Infinity's oral argument regarding claim 27, the Court posed this question to Infinity's counsel:

> [I]f the patentee said in the context of ***any*** discussion in the prosecution, here is what is a passive link, here is what is not a passive link. A person of ordinary skill in the art can, and should, rely on that in addressing the scope of the claims that are before us; right?"

(Tr. at 76-77 (emphasis added)).  Infinity's counsel agreed:  "unless the Patent Office has said they disagree and makes [the applicant] change their meaning."  (*Id.*)  Here, the Patent Office ***accepted and agreed*** with Infinity's statements regarding "passive link," and as such permitted the claims to issue over *Perkins*.  As the Court found, the meaning of "passive link" that Infinity used to secure its claims over *Perkins* during the original prosecution lasted until Infinity needed to secure an earlier priority date during reexam, at which time Infinity abandoned that meaning and adopted a contradictory meaning.

Infinity is also wrong that the cited discussion was limited to claim 27.  The patentee explained that the key portion of the response "denotes some significant differences between

Perkins' Patent and the ***Applicant's Patent Application***." (D.I. 148, Ex. 25 at 8 (emphasis

added)).  And immediately following the discussion of "passive link," the patentee concluded as

follows: "Consequently, the ***Applicant's claims 27 - 29, 32 - 48, and 52 - 54*** are different than

the prior art as required by 35 USC 102e." (*Id*. at 12 (emphasis added)).  The prosecution history

refutes Infinity's position that the statements relied upon by Oki Data and the Court are limited

to claim 27.  Hence, it is not surprising that Infinity cites nothing for its position.

Infinity spends much of its brief recounting the history of claim 27, but it is irrelevant.  In

addition to the preceding point, the prosecution history of claim 27 supports Oki Data's position,

not Infinity's.  The examiner rejected a previous version of claim 27 (which did not require a

"passive link") over *Perkins* because the internal fax modem embodiment of *Perkins* disclosed a

non-interrupted transfer of data between the fax machine and the computer, as required by that

version of claim 27.  (D.I. 178, Ex. A at 4).  The patentee then amended the claim to require a

"passive link," and argued that it was distinguishable over the internal fax modem embodiment

of *Perkins* because (as discussed above, in Oki Data's briefs, and the Court's ruling) the claimed

"passive link" must extend to the computer's I/O bus.  (D.I. 148, Ex. 25 at 7-12, 17).

Infinity ignores this back-and-forth and instead asserts that the key portion of the

extensive prosecution of claim 27 was the phrase "computer interface." (D.I. 178 at 8).  But the

phrase "computer interface" is not mentioned or discussed anywhere in the relevant portions of

the September 2002 response, unlike "passive link." (D.I. 148, Ex. 25 at 7 ("The Applicant

creates a ***passive link*** between the facsimile machine and the computer in order to accommodate

the signal transfer for printing or scanning. ***Therefore***, the Applicant ***does not require any***

***intervening apparatus*** as does Perkins."); *id.* at 12 ("Contrary to [*Perkins*], when the Applicant

transfers digital data from the facsimile transceiver ***through a passive link*** for scanning to the

8

computer, the non intercepted data enters through the RS 232 type connector port of the computer and passes ***directly to the I/O Bus*** . . . providing a true non intercepted digital signal between the facsimile transceiver and the computer." (emphasis added)).  The only mention of "computer interface" ("the Applicant can transfer [data] without the need for a modem at the *computer interface*" ) is in a different context (analog vs. digital signals), and the applicant used that phrase interchangeably with the word "computer" itself (by stating certain claims "do not require a fax modem at the *computer*").  (*Id.* at 8-9).  Infinity does not set forth exactly what it believes a "computer interface" is and, regardless, has failed to show that the patentee relied on anything other the terms "passive link" and "computer" in distinguishing *Perkins*.

In its final reimagination of the prosecution history, Infinity offers a new "depiction" of the embodiment of *Perkins* with an internal fax modem device 3 showing Infinity's reimagined position regarding "passive link." (D.I. 178 at 9).  Infinity fails to cite any support for its claim that the PTO distinguished *Perkins* on this basis.  In fact, while Infinity now focuses on the "card slot" as the operative connection to the computer and the end of the "passive link," that feature is never mentioned in the patentee's September 2002 response.  (*See* D.I. 148, Ex. 25).  Nor is a "card slot" mentioned or depicted in *Perkins* itself.  (*See, id.*, Ex. 39).  This hypothetical position is fabricated from thin air, and is irrelevant in view of the clear and unequivocal position taken by the patentee in distinguishing *Perkins* that the "passive link" must extend to the I/O bus.[6] (Ex. 25 at 12; D.I. 172 at 8-11).

---

[6] Notably, Infinity's expert never mentions a "computer interface" or any "slot" in his purported discussion of "ports and interfaces as the endpoints in a [passive] link."  (D.I. 178 at 4; D.I. 149, Ex. 6).  If Infinity's view about the import of these concepts is correct, one would have expected its expert to discuss them in his declaration as to the meaning of "passive link."

C.      **There Was No Error Of Law Regarding Surrender**

Infinity asserts that the Court erred in its application of disclaimer.  (D.I. 178 at 9-10).  But the Court cited *Tech. Properties* to demonstrate the principle that an applicant's arguments and statements have meaning and effect even if the patentee claims, after the fact in litigation, that applicant could have distinguished the prior art on narrower grounds.  (D.I. 172 at 11).  This is a correct statement of the law.  In fact, Infinity's counsel agreed that "any discussion in the prosecution" about what constitutes a passive link may be relied upon by a person of ordinary skill in the art if the Patent Office agrees with that discussion.  (*See supra* at 7; Tr. at 76-77).

Thus, even if *Perkins* did not disclose an internal intervening apparatus, the patentee's statements about the passive link extending to the I/O bus would be considered by a person of skill in the art in understanding the point at which the "passive link" ended and the "computer" began.  But as the Court correctly found, *Perkins **did*** disclose an internal intervening apparatus under the standard applied at the time, and therefore Infinity's statements about the scope of "passive link" ***were*** directly pertinent to distinguishing the prior art and to defining both "passive link" and "computer."  (D.I. 172 at 11).

Thus, Infinity's arguments regarding disclaimer should be rejected.

D.      **"Computer" Is Indefinite**

Infinity focuses entirely upon the term "passive link" and makes no separate arguments regarding "computer."  (D.I. 178 at 10).  Thus, as set forth in the Court's opinion, the Court should deny Infinity's motion regarding "computer."

## CONCLUSION

For the above reasons, Oki Data requests that the Court deny Infinity's motion.

10

Respectfully submitted,

SHAW KELLER LLP

*/s/ Andrew E. Russell*
John W. Shaw (No. 3362)
Jeff Castellano (No. 4837)
Andrew E. Russell (No. 5382)
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
jcastellano@shawkeller.com
arussell@shawkeller.com
*Attorneys for Oki Data Americas, Inc.*

OF COUNSEL:
Marc R. Labgold, Ph.D.
Patrick J. Hoeffner
NAGASHIMA HASHIMOTO & YASUKUNI
12005 Sunrise Valley Drive, Suite 203
Reston, VA 20191
(703) 901-8860

Dated: July 22, 2019